## HENRY BRUEGGESTRADT

*v.*

## KARL G. LUDWIG *et al.*

*Opinion filed February 19, 1900.*

1. MASTERS IN CHANCERY—*a master is presumed to have obeyed the order of reference.* An objection that the chancellor considered depositions that were not produced before nor considered by the master cannot be sustained, where the order of reference directed the master to consider all the testimony that had previously been taken in the cause, among which were the depositions in question, and there is no affirmative showing that the master disobeyed the order of reference.

2. SAME—*master's findings not entitled to equal weight with chancellor's.* The master's findings of fact are only advisory to the chancellor, and though his findings are entitled to great weight where he has heard the witnesses testify, they are not entitled, in an appellate tribunal, to equal weight with those of the chancellor who has also heard the witnesses.

3. SAME—*proper course where master refused to admit competent evidence.* When the chancellor has ruled that testimony rejected by the master is admissible it is proper practice to re-refer the cause, with directions to the master to admit the testimony.

4. MORTGAGES—*when holder of note and trust deed does not take title freed from equities.* One who has notice that a party having a note and trust deed to sell has no authority to dispose of the securities except for cash, and who takes the securities in part payment of the party's own debt to him without paying anything or parting with any rights, does not take a title freed from the equities between the maker of the note and the party having it for sale.

5. FRAUD—*what not a ratification of fraudulent sale of note and trust deed.* Fraud in the transfer of a note and trust deed is not ratified by subsequent acts of the mortgagor, induced by the oppressive conduct of the parties guilty of the original fraud, who have taken advantage of his necessities under stress of circumstances amounting to moral duress.

6. PLEADING—*the direct averment of agency is unnecessary if sufficient facts are alleged.* A finding in a decree that a certain person who negotiated the transfer of a note and trust deed was acting as the agent of the transferee is authorized, where, though there is no direct averment of agency, sufficient facts are alleged to justify the conclusion drawn.

*Brueggestradt* v. *Ludwig,* 82 Ill. App. 435, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

When this case was before the Appellate Court for the First District the following statement of the case was made and opinion rendered by Mr. Presiding Justice WINDES:

"Appellant, on October 4, 1895, filed his bill in the superior court of Cook county to foreclose two trust deeds made by appellees Karl G. Ludwig and wife, one dated October 1, 1894, to Otto C. Butz, trustee, and William J. Haerther, successor in trust, to secure the note of said Ludwig, for $2000, due in five years from date, with interest at seven per cent per annum, payable semi-annually, the interest being evidenced by ten coupon notes of $70 each, providing for foreclosure in case of default in payment of principal and interest for thirty days, or of waste or of non-payment of taxes; the other trust deed, dated March 20, 1895, to William Gibson, trustee, to secure the note of said Ludwig for $225, due in five years from date, with interest at seven per cent per annum, payable semi-annually, the interest being evidenced also by coupon notes of $7.87 each, providing for foreclosure in case of default in payment of principal or interest for thirty days, or of waste or of non-payment of taxes, and both said trust deeds conveying the same property,—a lot in Rogers Park, Cook county, Illinois. The grounds of the foreclosure alleged were default in the payment of interest becoming due October 1, 1895, on the note of $2000, waste, and failure to pay taxes. A receiver was appointed pursuant to the prayer of the bill.

"Among other defendants to the bill were Edwin S. Hartwell, William Thiel and Richard C. Hedrich, who claimed mechanics' liens on the property, and Anton Dietsch, a judgment creditor of Ludwig, who was allowed

to intervene on petition by him filed and have his rights adjusted. The lien claimants all answered the bill, and also filed cross-bills, except Hedrich, who made his answer a cross-bill. William H. Mulholand filed an intervening petition January 9, 1897, asking to be made defendant, which was allowed, and on January 13, 1897, filed his cross-bill, by which he claimed to have acquired title in fee to said property by quit-claim deed from Ludwig and wife, dated October 28, 1896, and that the two trust deeds described in appellant's bill were fraudulent and without any consideration, except as to the sum of $155, under the trust deed of March 20, 1895, and asking the cancellation of the trust deed of October 1, 1894, and also of the trust deed of March 20, 1895, except as to the sum of $155, which he offered to pay to appellant, and also offering to have re-conveyed to appellant, or as the court might direct, a certain South Dakota farm referred to *infra.*

"September 22, 1896, Ludwig and wife were defaulted in the original bill, but on April 28, 1897, they filed their petition, asking that their default be set aside and for leave to answer, which was allowed. They answered, and also, July 9, 1897, filed their cross-bills, making the same claims as to the two trust deeds described in the original bill as Mulholand, setting forth the facts constituting the fraud in substance as shown *infra* in the findings of the decree, admitting that they had conveyed said lot to Mulholand as he alleged, but that the conveyance was in the nature of a mortgage, and made the same offers to do equity as made in the cross-bills of Mulholand.

"William J. Haerther, who was made a defendant to the original bill and all the different cross-bills, and was charged in the cross-bills of Mulholand and the Ludwigs, together with appellant, with conspiracy to defraud the Ludwigs, made default, and his evidence was not taken by any of the parties.

"October 14, 1896, the cause being then at issue as to the original bill, the intervening petition of Hedrich and the cross-bills of the lien claimants, it was referred to a master to take proof and report the same with his opinion on the law and evidence. After the depositions of Herman Zarnicke, William W. Hopkins and John J. Myers, witnesses on behalf of the lien claimants and Mulholand, had been taken and filed in the superior court, and after considerable testimony had been taken before the master, the issues were made up on the cross-bills of Mulholand and the Ludwigs, and both said cross-bills, upon the issues so made, were in August and September, 1897, referred to the same master to take proof and report his conclusions thereon of law and fact, and the master was thereby ordered to consider all testimony, depositions and proof theretofore taken in the cause. The hearing proceeded before the master, and after the evidence was closed, appellees moved the chancellor to direct the master to admit in evidence certain examined copies of the Cook county records, and testimony respecting the same, offered before the master November 30, 1897, which motion was continued for hearing until the coming in of the master's report upon the whole case.

"The master made his report,. and after hearing the objections of the respective parties thereto, it, together with said objections, was filed in court March 16, 1898. The objections were ordered to stand as exceptions, and the hearing was had April 19, 20, 21 and 22, 1898, before the chancellor, upon all the pleadings, the master's report, the evidence taken and offered before the master, including the evidence which was offered November 30, 1897, which the master refused to admit, the depositions of Zarnicke, Hopkins and Myers, and the exceptions to the master's report. It does not appear at what time the chancellor made his decision on the exceptions to the master's report.

"June 7, 1898, the draft of a final decree was presented to the chancellor to be entered, whereupon appellant moved to strike out of said draft the part thereof which found that the master was in error in rejecting the evidence offered by the appellees November 30, 1897, above mentioned, and finding that said evidence was properly before the chancellor for consideration on the hearing of the master's report, which motion the chancellor denied. The chancellor also, at the same time, denied the motion of appellant, then made, to re-refer said cause to the master, with directions to permit him to offer proof in explanation and rebuttal of said testimony offered November 30, 1897.

"The rules of the superior court governing masters in chancery provide, among other things not here material, that on a reference to take proof and report 'his conclusions thereon to the court, the master shall have full power and discretion to pass upon all questions of competency of witnesses and the propriety and relevancy of all questions or interrogatories put by counsel, and the master shall note his ruling upon each objection in the minutes of the proceedings before him; and when the master has ruled that a party or witness shall answer a given interrogatory, it shall be the duty of such witness or party to answer in the same manner as if such witness or party had been so directed by the court, and in case that the master shall hold that any question is irrelevant or incompetent the same shall not be answered. If either party shall except to the ruling of the master upon the admissibility of testimony or evidence, they shall, after the testimony and evidence before the master is closed and before he makes his report thereon, bring such objections and exceptions to the master's ruling upon the testimony before this court, and if the court shall sustain the ruling of the master he shall immediately proceed to make his report upon the testimony and evidence submitted to him, and if such objections and exceptions to

the rulings of the master shall be sustained, the master shall proceed to take such further testimony as the court may direct; and shall disregard, in making up his report, such testimony as the court may rule to be incompetent and irrelevant.'

"A part of the evidence so offered before the master on November 30, 1897, and rejected by him, was that of witness George D. Cole, by whom appellees' counsel offered to prove that certain papers, purporting to be copies of various entries and records in the recorder's office of Cook county, were true copies of such entries and records, and that he examined said entries and records and compared said purported copies therewith, and found the same to be true and correct copies of said entries and records. The chancellor sustained appellees' exceptions to the rulings of the master in this respect, but it does not appear from the record that the offered testimony of this witness was taken either by the court or the master.

"The report of the master, after making numerous findings of fact and conclusions of law based thereon, to the effect, in substance, that there was no fraud in reference to the two trust deeds sought to be foreclosed, and that appellant was entitled to a decree foreclosing the same for the sum of $2684.55, which he found to be due thereon, found that there was due also to the several lien claimants the several amounts claimed by them, with legal interest, and to the judgment creditor Dietsch, $424.30, and that they, respectively, were entitled to liens on said property, giving preference to each of said liens on certain proportions of the value of the property, not necessary to be herein enumerated.

"The chancellor entered the final decree June 7, 1898, which, after reciting that the hearing was had upon the several matters as above stated, sustains all the exceptions of Ludwig, Mulholand and Hartwell thereto, approves the report as to the amounts found due the lien claimants and the judgment creditor Dietsch, and finds

in substance, viz.: On May 18, 1893, and for several years
prior thereto, appellant and Haerther were on terms of
intimate business acquaintance and dealings, and appel-
lant on that date had loaned to Haerther $4000 on his
note due on or before one year thereafter, which was se-
cured by a trust deed to appellant on property in Cook
county, which appellant believed to be a first lien there-
on but which was in fact a junior lien, as Haerther then
well knew.   Haerther did not pay appellant this note at
maturity.   Appellant discovered in the summer of 1893
that his lien was a junior lien, and demanded that Haer-
ther re-pay the $4000 or produce good security therefor.
Haerther, who was on October 22, 1894, insolvent and
financially irresponsible, had to that date failed to com-
ply with appellant's demands.

"October 1, 1894, Ludwig, being the owner in fee of the
premises in question in Rogers Park, desiring to erect
a dwelling thereon for a home, in order to provide funds
therefor made the $2000 note and interest notes evidenc-
ing the interest on the principal note, above described,
and together with his wife made the said trust deed to
Butz.  On the solicitation of Haerther, Ludwig delivered
these securities to Haerther, as agent for an undisclosed
principal who would purchase the same if the security
proved good, the notes being executed by and payable to
the order of Ludwig and by him endorsed in blank, and
Haerther then agreed to pay over to Ludwig the sum
of $2000 if the securities for the proposed loan proved
satisfactory, but he fraudulently converted the notes and
trust deed to his own use, and refused to account to said
Ludwig therefor or to pay him the said $2000 or any
part thereof.

"On October 22, 1894, appellant, knowing of Haerther's
fraud in converting said securities to his own use, by
fraudulent coercion and collusion with Haerther obtained
said securities from Haerther as part payment upon or
as a better security for the said amount due from Haer-

ther to appellant, but that appellant paid no consideration for said securities at the time of obtaining the same. Appellant also knew at this time that Haerther was habitually dishonest in his business methods and dealings, and had been before that time financially associated and interested with Haerther in the promotion and outcome of other dishonest and unlawful enterprises. Before taking said securities appellant made no inquiry of Ludwig in relation thereto, and as Haerther was his agent, appellant is charged with notice of all the facts and circumstances relating to Haerther's possession of the securities and the absence and want of consideration therefor. Appellant failed to prove that he acquired said securities from Haerther in good faith for value and in the usual course of business. The transfers of said securities from Haerther to appellant was fraudulently concealed from Ludwig until January, 1895, whereupon Ludwig immediately applied to appellant for a payment of the $2000 promised by Haerther, and continued to look to appellant for payment thereof.

"From October 22, 1894, to February 26, 1895, appellant and Haerther, in their relations and dealings with Ludwig, pursued a course of fraudulent concealment, evasion and delay, by means of which Ludwig was worn out, disheartened and impoverished and his family reduced to want and distress for the common necessities of life, and he was rendered unable to further press his claim on appellant. Appellant and Haerther took fraudulent advantage of Ludwig's necessities and exhausted condition, and did, in January and February, 1895, confederate, conspire and co-operate, by artifice and intimidation, to trick and coerce Ludwig into taking something else, of little or no value, in lieu of the cash due him, and by the false and fraudulent representations of appellant and Haerther, and by their oppressive and unconscionable conduct towards Ludwig, he was, on February 26, 1895, induced to take in settlement of his claim the sum

of $135 cash and an equity of redemption in a farm in South Dakota, and to convey said. property in Rogers Park, by warranty deed, to one Hendricks, the attorney of appellant, in secret trust for appellant, to surrender to Haerther certain of his promissory notes, and to allow appellant to sell for him, Ludwig, certain stock of the Ristow-Poths Manufacturing Company, then belonging to Ludwig, for the sum of $1000 in cash, which appellant promised to do. Appellant falsely represented and warranted said farm in South Dakota to be of the value of $2000 in cash, which was subject to a mortgage of $400, and was of little or no value above the mortgage, as appellant then well knew. Ludwig, in making said settlement, acted without the advice of counsel, and under the stress of necessitous conditions, induced by the wrongful acts of appellant and Haerther, was at the time in a situation of equitable duress. This agreement was not carried out by appellant as to the sale of the stock and payment to Ludwig therefor of $1000, and he also fraudulently held and retained the warranty deed to said Hendricks. While appellant, through Hendricks, held the title to said Rogers Park lot, he became obligated to pay out for improvements thereon $155, which entered into and became a part of the consideration for the note of $225 and trust. deed securing the same, hereinbefore described. He also, during that time, threatened to evict Ludwig from said premises unless he paid to appellant, as rent therefor, $14 per month.

"On March 20, 1895, Ludwig, acting under the force and pressure of circumstances as above stated, and being in a condition of equitable duress, thereby made and delivered to appellant said note of $225, and with his wife executed said trust deed to Gibson, securing the same, whereupon appellant destroyed said warranty deed to Hendricks. The consideration and inducement for the making of the last mentioned note and trust deed was Ludwig's re-investment with the legal title of the Rogers

Park lot, the discharge of Ludwig from $70 interest on said $2000 note, the forbearance of appellant to evict Ludwig from said premises, and forbearance to foreclose the trust deed of October 1, 1894, thereon, and the said sum of $155 paid by appellant.

"The actings and doings of appellant from the month of January, 1895, to and including the taking of the note and trust deed of March 20, 1895, were part and parcel of a continuing fraudulent scheme and design to deprive Ludwig of said Rogers Park lot without just compensation, and the payment of said $155 by appellant was induced and brought about by reason of appellant's own fraud and wrongdoing; that it was no consideration for said note of $225, and he was not entitled to any lien on said Rogers Park property under the trust deed of March 20, 1895, but only to a credit *pro tanto* on the amount of $525 due from appellant to Ludwig, hereinafter stated. Appellant did not show that he was lulled into a sense of false security by the making and delivery to him of the note and trust deed of March 20, 1895, by Ludwig, nor had appellant shown himself to have taken any action prejudicial to his rights against Haerther by reason thereof.

"On February 26, 1895, when said South Dakota farm was conveyed to Ludwig, it was encumbered by a mortgage of $400, bearing interest at eight per cent per annum, on which there was overdue and unpaid for interest on that date the sum of $32. On the return to appellant of the title to the South Dakota farm he is charged with the amount of said mortgage, said interest of $32, and lawful interest from February 26, 1895, to the date of the decree, which was found to be $525. On October 28, 1896, Ludwig and wife, by their quit-claim deed, conveyed said Rogers Park lot to the appellee Mulholand, as a mortgage security for a certain indebtedness theretofore incurred by Ludwig.

"The decree then ordered and directed that Ludwig and wife forthwith convey to appellant, by good and snf-

184—3

ficient deed, said South Dakota farm, describing it spe-
cifically; that said appellant surrender and cancel said
$2000 note, the said coupon note evidencing the interest
thereon, and the trust deed securing the same, and also
the $225 note, the interest notes evidencing the interest
thereon, and the trust deed securing the same, and that
he also pay to Ludwig the sum of $525 in cash, and in
default of appellant complying with the decree in sur-
rendering and canceling said notes and trust deeds, that
the master in chancery release the same. It was further
ordered and decreed that the receiver surrender posses-
sion of said Rogers Park lot to Ludwig, render an ac-
count of his receipts and disbursements, and also to pay
to the clerk of the court all moneys remaining in his hands
as receiver, from the rents and income thereof, to remain
subject to the further order of the court; also, that if the
surplus in the receiver's hands should, on the auditing
of his account by the master, (which was directed,) be in
excess of $285, then such amount should be paid by Lud-
wig, and if such surplus should be less than $285, then
such amount should be paid by Ludwig to the clerk of
the court, to remain subject to the further order of the
court. It was further ordered and decreed that within
thirty days after said Ludwig should be admitted to the
possession of the Rogers Park lot he should pay to the
said lien claimants and Dietsch the amounts severally
found to be due thereon, and in default thereof that said
premises be sold to satisfy said amounts, at such time
and place and in such manner as the court might direct."

Opinion by Mr. Presiding Justice WINDES:

"A thorough examination of the master's report, the
exceptions thereto and the evidence, in the light of coun-
sel's arguments, leads us to the conclusion the master's
report that there was no fraud in reference to the two
trust deeds sought to be foreclosed is not sustained by
the evidence, and that the findings of fact made by the
chancellor, the substance of which is contained in the

statement preceding the opinion, are in the main correct, and also that the decree, except as will be stated *infra*, is correct.

"The finding of the decree that Ludwig, in making and entering into the agreement with appellant and Haerther by which the South Dakota farm was conveyed to him, 'acted without the advice of counsel,' is not, in our opinion, sustained by the evidence. We think that the evidence shows that he acted in disregard of the advice of his counsel, and because of his necessities, and by reason of the fraudulent, oppressive and unconscionable conduct of appellant and Haerther towards him.

"The finding of the decree that the encumbrance on the South Dakota farm bore interest at eight per cent per·annum, and that there was due and unpaid $32 interest thereon on February 26, 1895, and that $525 is a reasonable sum to be paid by appellant to Ludwig on account of said encumbrance and interest when Ludwig should return the legal title of said farm to appellant, is not sustained by the evidence, except as to the sum of $400, the amount of said encumbrance, and for that amount only in the event the legal title of said farm should be returned to appellant cleared of said encumbrance as well as of all other claims or liens thereon caused by Ludwig, or by any one who held the title for Ludwig, up to the time of such re-conveyance to appellant. The evidence shows that this land was conveyed to one J. A. Brenner, and the person holding the encumbrance on it was L. J. Brenner. There is no evidence that the encumbrance was ever paid by Ludwig or by any one for him. The direction of the decree in this regard was therefore erroneous.

"The direction of the decree that the receiver pay any surplus which might, on accounting by him, be found in his hands in excess of $285 to Ludwig, does not seem to be based on any finding of fact by the master or the court, nor upon any evidence to which our attention has

been directed or which we have been able to discover in the record. Inasmuch, however, as in the view we take of the rights of appellant he can have no interest in the funds in the receiver's hands, and as no one else has complained of this part of the decree, we see no reason why it should be disturbed.

"Prior to the submission of this cause two motions were made, one on behalf of the appellee Thiel and the other on behalf of the appellee Hartwell, suggesting diminutions of the record and asking leave to supply the same by filing supplemental records, which motions were reserved to the final hearing. The supplemental records relate solely to the respective mechanics' liens claimed by these appellees. If we are correct in the conclusions we have reached appellant has no interest in the allowance of these claims, no one else complains of them, and we therefore do not pass upon these motions.

"It is claimed that the chancellor erred in considering, on the hearing of the master's report, certain depositions, being those of the witnesses Zarnecke, Hopkins and Myers, taken at Redfield, Dakota, because, it is said, they were not offered before and were not considered by the master. If the depositions were not offered before the master and were not considered by him it would have been an error in the chancellor to consider them on the hearing of exceptions to the master's report. The chancellor has no right, on the hearing of a master's report, to consider any evidence not before the master. (*Prince* v. *Cutler*, 69 Ill. 267; *Cox* v. *Pierce*, 120 id. 556.) But, as shown in the statement above, the order of reference directed the master to consider all testimony, depositions and proofs theretofore taken in the cause. In the absence of an affirmative showing that the master disobeyed the order of reference we will presume he did his duty and obeyed the order. Moreover, it appears by a stipulation of counsel entered into before the master during the progress of the hearing, which refers to the testimony of

these very witnesses, he thereby recognized these depositions as being before the master; also, the master, in his report, says that considerable testimony was taken upon the question of the value of the South Dakota farm. The depositions of these three witnesses relate wholly to that subject, and there is not much testimony, aside from these depositions, relating to the value of this farm. We think appellant's claim in this respect is not tenable.

"We are of opinion that the chancellor did not err in sustaining the exceptions of appellees to the rulings of the master in rejecting the testimony offered by them on November 30, 1897, because the copies of entries and records then offered related to the dealings between appellant and Haerther prior to October 22, 1894, which, if they were correct copies, as was offered to be shown by the witness Cole, they were competent and material evidence on the question as to whether, prior to that date, appellant and Haerther had intimate business relations towards each other; that Haerther was indebted to appellant in a large amount as far back as May 18, 1893; that appellant knew that Haerther was habitually dishonest, and whether, on October 22, 1894, appellant caused to be released certain encumbrances on Haerther's real estate then owned or which had been owned by him. But having so ruled, we think the proper practice to have been pursued was to re-refer the cause to the master with directions to admit the testimony of the witness Cole, when he could have been cross-examined, and appellant would have had an opportunity, if he so desired, to offer evidence to disprove Cole's testimony, or to explain, if he could, the several entries and records. The rules of the superior court, we think, contemplate such a practice as we have indicated, though, no doubt, they authorize the court to direct otherwise. Under the circumstances here shown, the offered evidence of the copies of the entries and records was not complete or competent, under the objections of appellant's counsel, made at the time, that

they were not certified, and there was no other proof of their genuineness or correctness without the testimony of the witness Cole that they were true copies. The testimony of Cole was not taken, and therefore there was no proof before the chancellor that these purported copies were true copies of said entries and records. Some of the findings of the decree are, in part at least, based upon this offered evidence, but if the evidence which was properly admitted was sufficient to sustain the decree of the court the error was harmless. *Dunn* v. *Berkshire,* 175 Ill. 243.

"Appellant, on cross-examination, admitted that he gave the money to Haerther, which he claims was the consideration for the purchase by him of the $2000 note and trust deed, six months before October 22, 1894, and declined to swear that it was not paid to him twelve months before; said that he did not know exactly when it was. Also, when asked if he did not have trouble with Haerther about an amount which he claimed that Haerther owed him in the summer of 1894, said that he did not remember. He also said that he did not pay Haerther on October 22, 1894. The witness Arenz testified that he was present when Ludwig told appellant that he (appellant) got the papers from Haerther by threats, and that thereupon appellant told Ludwig he was not yet Americanized, and put Ludwig out of appellant's saloon. The witness Gibson testified that appellant told him that Haerther owed him (appellant) the money, and he got the $2000 trust deed because he did owe him the money, and also that appellant said he obtained this note and trust deed in satisfaction of a debt that Haerther owed him. We think the clear preponderance of the evidence properly admitted is, that on and for a long time prior to October 22, 1894, Haerther was indebted to appellant to an amount exceeding $2000, and that he received this note and trust deed from Haerther in part payment thereof or as additional security for such

indebtedness, and also that he knew that Haerther was not the owner of the note and trust deed and had no right to dispose of them except for cash. Appellant therefore failed to prove that he obtained this note and trust deed upon the payment by him of $2000 cash in good faith, and without notice of Ludwig's rights, as he claimed to have done.

"It is claimed by appellant that this note and trust deed in his hands are not affected by any equities between Ludwig and Haerther; that Haerther was Ludwig's agent to negotiate them, and as such agent transferred a good title to appellant, upon the theory that he is in the position of an original mortgagee, and cites in support of this contention *Keohane* v. *Smith*, 97 Ill. 156, *McIntire* v. *Yates*, 104 id. 491, *Peoria and Springfield Railroad Co.* v. *Thompson*, 103 id. 187, and other cases. These cases are not, in our opinion, applicable, because he has not shown that he paid value or parted with any rights, and had constructive, if not actual, notice that Haerther had no right to dispose of the securities except for cash. Had he paid the cash to Haerther at the time a different question would be presented.

"The further claim is also made that Ludwig, when notified of the transfer to appellant, recognized and ratified the validity of such transfer by promising to pay the interest on the note, and that by the receipt of $135 from appellant and the agreement of settlement, pursuant to which he received the conveyance of the farm in South Dakota, and made and delivered the two notes and trust deeds of $225, in which was included the first interest note of $70 which became due on the $2000 note, and by the arrest of Haerther, which, it appears, was caused by Ludwig on the charge of embezzlement, Ludwig is now estopped from alleging the invalidity of either of these trust deeds. We think this contention is answered by the findings of the court, (which, in our opinion, are sustained by the evidence,) that all these actions of Ludwig

and transactions with him were induced by the fraudulent, oppressive and unconscionable conduct of appellant and Haerther towards Ludwig, and by his necessities and the stress of circumstances under which he was placed by reason thereof, amounting to moral duress. (*Brown* v. *Gaffney,* 28 Ill. 149; *Russell* v. *Southard,* 12 How. 138; *Montgomery* v. *Pickering,* 116 Mass. 227.) In the *Brown case, supra,* the court held that where the action of a creditor was oppressive and unconscionable and intended to coerce the debtor, it called for the interposition of a court of equity to afford relief. In the *Russell case, supra,* it was held that where a debtor was in distress for money and a stranger without funds or resources, his consent to a sale of his property for a grossly inadequate consideration at the dictation of a money lender who took advantage of the pressure of his wants, a court of equity would not consider a consent thus obtained was sufficient to fix the rights of the parties; that necessitous men are not, truly speaking, free men, and that an unconscientious advantage which ought not to be retained was sufficient to be shown to avoid such a purchase. In the *Montgomery case, supra,* which is to the same effect in principle, it was held that the original fraud was not cured nor waived, although the party defrauded subsequently made a deed conveying away her rights under legal advice, with full knowledge of the original fraud and of her legal rights.

"In this connection it is also claimed that both the cross-bills of Mulholand and Ludwig show a complete ratification by Ludwig of the validity of the note and trust deed of $2000 and a settlement of Ludwig's claims against Haerther. These cross-bills set forth the facts substantially as found by the decree, which, as we have seen, when all taken together, do not amount, in equity, to a ratification or settlement which should bind Ludwig or estop him.

"It is also argued that as the master heard the witnesses his findings ought to carry great weight; that he

was in a better position to judge of the facts than the chancellor, and his findings should have the same weight which is accorded to the findings of a chancellor when the witnesses are heard in open court. While it is true that the master's findings are entitled to great weight when he has heard the witnesses, it has not been held that they are entitled, in an appellate tribunal, to the same consideration as that of the chancellor when he has heard the witnesses. The master's findings are only advisory to the chancellor. *Fairbury Union Agricultural Board* v. *Holly,* 169 Ill. 9; *Ennesser* v. *Hudek,* id. 494.

"The contention is made that appellees have been successful before the chancellor only upon the theory that under the rule announced in *Olds* v. *Cummings,* 31 Ill. 188, and repeatedly followed in this State, appellant took the note and trust deed of $2000 subject to all equities between Ludwig and Haerther, and that this theory must fall because no such case is made by the pleadings. We do not think the rule in *Olds* v. *Cummings* need be invoked to sustain the decree, and are inclined to the opinion the rule of that case is not applicable here. Appellant may be considered as the original mortgagee, but cannot prevail because his money was not paid for the note and trust deed. He parted with nothing, and knew Haerther had no right to dispose of the securities except for cash, or should have known, the circumstances within his knowledge being considered.

"It is also said the finding in the decree that Haerther was appellant's agent when he received the note and trust deed from Ludwig is improper and cannot stand because there is no such allegation in the pleadings; that it is not enough that the proof makes a good case, if there is no allegation to which the proof may be applied. Ludwig's cross-bill, as we have seen, substantially alleged the facts as found by the decree, and from these facts the conclusion follows that Haerther was appellant's agent. It was not necessary that the plead-

ings, in so many words, should have a direct averment that Haerther was appellant's agent.

"In the view we have taken of appellant's claims he is not interested in the mechanics' liens nor in the judgment against Ludwig. No one else makes complaint thereof, and we therefore do not discuss the questions raised by appellant with reference to either of these liens.

"The other contentions made by counsel in their briefs, both as against and in support of the decree, have been given consideration, but we deem it unnecessary to refer to them specially, as none of them could affect the disposition of the case which we have made.

"The decree is affirmed in all repects, except as indicated with reference to the South Dakota farm and the payment to Ludwig of $525 by reason of the encumbrance thereon, and interest, in which respects the decree is reversed, with directions to the superior court to modify it so that it shall direct a re-conveyance of the South Dakota farm to appellant, free and clear of all claims, liens and encumbrances done or suffered by F. Arenz or his grantees to the date of such conveyance, and the encumbrance of $400, within a time to be fixed but before appellant shall be required to cancel and surrender said notes and trust deeds, and that appellant pay to Ludwig the sum of $400, the amount of said encumbrance, less the sum of $155 due from Ludwig to appellant, simultaneously with such conveyance."

DENNIS & RIGBY, for appellant.

MANNING & COLE, for appellees.

Per CURIAM: After a careful consideration of this case we are satisfied that it was correctly decided below, and that the statement and opinion of the Appellate Court, which we adopt, sufficiently state the grounds upon which the decision is based.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*