## No. 10,183.

## McClellan v. Morris, et al.

Decided April 3, 1922.   Rehearing denied May 1, 1922.

Action involving a real estate transaction and promissory notes in connection therewith.   Judgment for plaintiff.

## *Reversed.*

## *On Application for Supersedeas.*

1.   Real Property—*Breach of Warranty—Encumbrances.*  As a general rule, in an action of covenant for breach of warranty against encumbrances, a knowledge of the encumbrance on the part of the vendee does not constitute a defense; but when it appears that the vendee has assumed the removal of such encumbrance, the rule does not apply.

2.   Bills and Notes—*Promissory Note—Infirmities—Knowledge.*  If a note is taken by endorsement under circumstances which impute knowledge of infirmities in it, so that the taking of it amounts to bad faith, the transferee is not a holder in due course.

3.     *Negotiable Instruments Act.*  Sections of the negotiable instruments act, chapter 95, R. S. 1908, reviewed and applied.

4.     *Negotiable Paper—Title—Agency.*  One having possession of negotiable paper has prima facie title thereto; but that title may be defeated or overcome by evidence that the note is held as an agent.

If the agency permits the agent to receive the proceeds without limitations as to their application, one taking the note need not follow the proceeds; but if the agency of the party is made to appear, the principal will not be bound beyond the authority given.

Where the holder has notice that the party acting as agent is such, he is bound to inquire into his authority.

5.  PRINCIPAL AND AGENT—*Scope of Authority.* A principal may confer such authority on his agent as he desires, and impose such limitations and restrictions as he may deem proper, and these are binding upon third persons with notice, if not waived by the principal.

> If the limitation of the agent's authority is known to the person with whom he deals, the principal will not be bound if the agent exceeds his authority.

6.  *Duty of agent.* It is implied in every agency, in the absence of express evidence to the contrary, that the power of the agent is to be exercised for the benefit of the principal and not for his own private advantage.

7.  PRACTICE AND PROCEDURE—*Petition.* A petition or motion filed in a cause is sufficient to bring the matter before the court.

8.  APPEAL AND ERROR—*Final Determination.* Where all the evidence is before the court of review and the questions involved fully presented, the reviewing court may determine the cause upon its merits.

*Error to the District Court of Weld County, Hon. Neil F. Graham, Judge.*

Mr. ERNEST MORRIS, Mr. JOHN C. NIXON, for plaintiff in error.

Mr. J. C. EWING, Mr. WORTH ALLEN, Mr. E. H. HOUTCHENS, Mr. WILLIAM A. HILL, for defendants in error.

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

DEFENDANT in error, Achziger, was plaintiff in an action in which the plaintiff in error and the defendants in error, other than Achziger, were defendants. The suit grew out of the following state of facts.

Plaintiff in error, McClellan, was the owner of a tract of farm lands near Greeley, Colorado. Achziger had been a tenant on the land of McClellan for a number of years, and was desirous of purchasing from McClellan one hundred and twenty-four acres of land, but had no funds with which to make a cash payment. McClellan's lands were

encumbered by a mortgage of $6500, held by a company in Colorado Springs, and by a mortgage of about $4000. held by the Sanborn estate of Greeley.

Achziger and McClellan entered into a contract by which one hundred and twenty-four acres of the McClellan land were to be deeded to Achziger, who was to encumber the same by deed of trust to secure a $6500 note, the proceeds of which were to be used to pay off the existing $6500. encumbrance, and by a second encumbrance to McClellan for $8500, the balance of the purchase price. McClellan was to encumber the remainder of the land by deed of trust, to secure a note of $10,000, out of the proceeds of which he was to pay off the Sanborn indebtedness. In pursuance of this plan, they arranged with one W. C. Roberts, a real estate and loan broker of Greeley, to negotiate the two new notes. Achziger made his note for $6500 to the order of Roberts, secured by a deed of trust on the land he was buying. At the same time, McClellan made his note to Roberts for the $10,000, and secured it by deed of trust on the land which he retained. The notes and trust deeds, together with a deed from McClellan to Achziger, were executed in the office of W. R. Kelly, attorney at law, of Greeley. Roberts claimed to represent the Colorado Springs holders of the old $6500 note, and under the agreement he was to pay off this indebtedness with the proceeds of the Achziger note. He was to pay the Sanborn encumbrance out of the proceeds of the McClellan $10,000 note, turning over to McClellan the surplus proceeds. Some question is made as to the delivery of these papers, but we think their delivery was established. The papers were entrusted to Roberts to negotiate the notes, and apply the proceeds thereof as above stated.

Roberts recorded the deed from McClellan to Achziger, and the deeds of trust; sold the $6500 note to defendant in error, Eckhardt, and the $10,000 note to defendant in error, Morris, and appropriated the proceeds to his own use. Shortly thereafter, he committed suicide, being hopelessly insolvent.

It should be noted that the arrangement with Roberts followed the making of a written contract between Achziger and McClellan, in which the discharge of the encumbrances, as above stated, was fully agreed upon. This fact is important as bearing upon the question whether or not there was a breach of McClellan's covenant against encumbrances in his deed to Achziger.

Achziger in his action attacked the validity of the notes given to Roberts, alleging that the defendants in error, Eckhardt and Morris, were not holders in due course. He also alleged a breach of McClellan's warranty against encumbrances. McClellan, by answer and cross-complaint, also attacked the transfer to Morris and Eckhardt, alleging, also, that there had been no delivery of the deed to Achziger. The principal issue was as to the good faith of the purchasers of the two notes given to Roberts. Upon that issue the court found in favor of the defendants. Morris, in the meantime, had purchased the $6500 note from the Colorado Springs parties, and Achziger borrowed $5000 of Eckhardt on his note secured by a deed of trust on the land conveyed to him by McClellan.

The decree adjudged the deed from McClellan to Achziger, the delivery of which McClellan contested, to be a valid conveyance, and that the covenant against encumbrances had been violated by McClellan; that $5000 borrowed by Achziger from Eckhardt should be a first lien upon Achziger's land, Achziger's $6500 note being made a second lien, and his note to McClellan for $8500 reduced to $3500, the third lien.

The decree directed that this $5000 which had been paid into the registry of the court, should be paid to Morris, who should, out of it, pay the Sanborn indebtedness, certain attorneys' fees for services rendered in relation to the said Sanborn notes, and that the balance, if any, be applied on the $6500 note purchased by Morris from the Colorado Springs Company.

It was further decreed that McClellan should bring into court the $8500 in notes given by Achziger to him, and

that there be credited thereon the $5000 borrowed by Achziger and turned over to Morris, and that Morris cause release deeds to be executed freeing the Achziger land and water from the lien of the old $6500 indebtedness and the Sanborn indebtedness.

As a necessary part of a review of this decree, it must be determined whether or not Achziger and McClellan were equally responsible for the employment of Roberts to negotiate the notes. This involves also that part of the decree which held that there was a breach of McClellan's covenant of warranty against encumbrances.

The complaint alleges that the Achziger note was made to Roberts, and delivered to him by direction of McClellan. The trial court evidently accepted that statement as the basis of a part of the judgment.

The evidence does not sustain that allegation. It appears from the testimony of Mr. Kelly, the attorney, and from the testimony of Achziger himself, that Achziger acted in the matter in his own interest, as did McClellan in his, and that the action on the part of each was in accord with the contract between them, each making Roberts his agent in the transaction.

While, as a general rule, in an action of covenant for breach of warranty against encumbrances, a knowledge of an encumbrance upon the part of the vendee does not constitute a defense, yet, when it appears that the vendee has assumed the removal of such encumbrance the rule does not apply. 15 C. J. 1278; *Reid v. Sycks,* 27 Ohio St. 285; *Gill v. Ferrin,* 71 N. H. 421, 52 Atl. 558.

The record contains a contract between McClellan and Achziger, under which Achziger purchases the land subject to the two encumbrances, and agrees that he will discharge the $6500 encumbrance.

The evidence conclusively establishes the fact that the $6500 note executed by Achziger was intended to enable him to raise money with which to pay off said encumbrance, and that Achziger made Roberts his agent to negotiate the note, and pay the indebtedness.

On the undisputed testimony, it must be held that the execution of the McClellan-Achziger deed and its delivery, were in part performance of the contract in evidence, and as a part of the original transaction.

The judgment as to the validity of the notes in the hands of Eckhardt and Morris must stand unless it appears that the court's findings were not sustained by the evidence. There is no question that if either Morris, or Eckhardt directly, or Eckhardt's agent, Hayden, was aware of the conditions under which the embezzled notes were entrusted to Roberts, the transfers were invalid. The modern doctrine is that if a note is taken by endorsement under circumstances which impute knowledge of infirmities in it, so that the taking of it amounts to bad faith, the transferee is not a holder in due course.

In *Rochester & Charlotte Turnpike Co. v. Paviour*, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790, it is said:

"One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose. While the courts are careful to guard the interests of commerce by protecting the negotiation of commercial paper, they are also careful to guard against fraud by defeating titles taken in bad faith, or with knowledge, actual or imputed, which amounts to bad faith, when regarded from a commercial standpoint."

This law has been embodied in our negotiable instruments act.

In section 4515, R. S. 1908, to constitute one a holder of a note in due course it is required:

"That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Other provisions of the act pertinent to the question in this case include section 4518, which provides that:

"The title of a person who negotiates an instrument is defective within the meaning of this act * * * when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.

Section 4519 which provides that:

"To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

And section 4522 which provides that:

"When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

It cannot be doubted that under section 4518 Robert's title was defective when he negotiated the notes, since he did so in breach of faith. Then, under section 4522 the burden was upon Eckhardt and Morris to show that they acquired the notes in due course. The statute is so construed in *Savings Bank v. Gregg,* 51 Colo. on page 362, 117 Pac. 1003. If they took the notes with knowledge that Roberts held them for negotiation to obtain funds for the payment of the existing encumbrances, they knew of Roberts' agency in that matter, and they are not holders in good faith. This is so not only under the statute, but under the settled rules of law regardless of statutes. This is distinctly held in *Johnson v. Harrison,* 177 Ind. 240, 97 N. E. 930, 39 L. R. A. (N. S.) 1207, a case particularly applicable to the situation of Morris, because there, as here, the agent received a release of his own debt as part consideration for the sale of the paper. The court held that the fact that the party offering the paper for sale was willing to apply a part of the proceeds on his debt was sufficient to put the purchaser on inquiry. To the same effect is *Brueggestradt v. Ludwig,* 184 Ill. 24, 56 N. E. 419.

Knowledge of the fact of agency destroys the apparent title of the holder, and the intending purchaser must then look to the authority of the agent. *Bank v. Ohio Valley Furniture Co.,* 57 W. Va. 625, 50 S. E. 880, 70 L. R. A. 312.

One having possession of negotiable paper has *prima*

*facie* title thereto. That title may be defeated or overcome by evidence that the note is held as an agent. If the agency permits the agent to receive the proceeds without limitations as to their application, one taking the note need not follow the proceeds.

But, "If the agency of the party is made to appear, the principal will not be bound beyond the authority given. And where the holder has notice that the party acting as agent is such, he is bound to inquire into his authority." Randolph on Commercial Paper, sec. 388.

"A principal may confer as much or as little authority as he sees fit upon his agent, and he may also impose such lawful restrictions and limitations upon his agent as may be deemed proper, and such restrictions and limitations will be as binding upon third persons who have notice of them as upon the agent himself, provided the principal does nothing to waive them." *American Lead Pencil Co. v. Wolfe & Co.*, 30 Fla. 360, 11 South. 488.

If limitation of the agent's authority is known to the person with whom he deals, the principal will not be bound if the agent exceed his authority. *Bryant v. Moore*, 26 Me. 84, 45 Am. Dec. 96.

From the evidence of Mr. Kelly, of whom Hayden, acting for Eckhardt, inquired in regard to the $6500 note, it appears that Hayden had notice that there were certain conditions to be performed before the note was to be delivered; and this was notice to Eckhardt whose agent Hayden was, according to Eckhardt's own testimony. Moreover, Hayden's admissions, reluctantly made, establish the fact that he knew that Roberts held the notes on condition, and that they were taken over for Eckhardt on the assumption that Roberts would comply with said conditions. Under the authorities, when Hayden became aware of the fact that Roberts held the notes on condition it was his duty to make sure that the conditions had been met. Not having made proper inquiry he is affected with knowledge of all facts which the inquiry would have disclosed. He cannot shut his eyes to matters clearly suffi-

cient to put him on inquiry, and then claim to be an inno-
cent purchaser. His knowledge is imputed to Eckhardt,
who is not, therefore, a holder in due course. The court's
finding to that effect is contrary to the evidence.

Morris, the holder of the $10,000 note, testified that he
did not have knowledge that the note was held under any
conditions, and that he would not have bought it had he
known of such conditions. Morris paid for the note by
surrendering a $5000 note of Roberts' which he held, and
turning over to Roberts liberty bonds to the extent of $3500.
Later, Morris began a suit to prevent the sale of the crops
on the McClellan farm, claiming that they should go to him
as holder of the $10,000 note, and the $6500 note, which he
had bought from the Colorado Springs Company.

In this latter suit Morris admitted that when he bought
the $10,000 note he knew that Roberts, out of its proceeds,
was to pay off the prior encumbrances. He says he trusted
Roberts to pay them off. These statements put him in the
same class as Hayden, and as to his knowledge there is no
question.

When he bought the paper with knowledge that Roberts
held it as an agent of the maker to raise money to pay off
another debt, and paid for it by releasing Roberts' debt,
the title which Morris received was affected by another
principle of the law of agency, namely, that an agent has
no power to use his office otherwise than for the benefit of
his principal. The fact that Morris gave something addi-
tional would not affect the application of this principle.
The transaction was an entirety. *Dowden v. Cryder*, 55
N. J. L. 329, 26 Atl. 941.

In Tiedeman on Commercial Paper, section 82, it is said:
"It is implied in every agency, in the absence of express
evidence to the contrary, that the power of the agent is to
be exercised for the benefit of the principal, and not for
his own private advantage."

After Morris had given the testimony above mentioned,
McClellan filed a petition asking that the judgment be
vacated upon the ground that it had been secured by false

testimony on the part of Morris; that evidence of the fact that he knew of these conditions on which the notes were held by Roberts was, under the circumstances, impossible to obtain except from Morris himself.

The trial court denied the relief sought, and dismissed the petition. The court's action in that respect, is here for review.

To permit a judgment thus obtained to stand is to refuse to apply, in a case wherein it is clearly applicable, one of the best established rules of equity, and to put a premium on fraud. It is axiomatic that one shall not profit by his own wrong.

Some objection is made as to the procedure, but under our practice, as several times announced, a petition or a motion filed in the cause is sufficient to bring the matter before the court. *Jotter v. Marvin,* 63 Colo. 222, 165 Pac. 269. Plaintiff in error was entitled to the relief sought, and the court erred in dismissing the petition.

The evidence is all before us, and the questions involved have been fully and ably argued; we have, therefore, deemed it best to determine the cause on its merits.

The decree goes farther than necessary, and makes a new contract for Achziger and McClellan, very different from the original. By the decree Achziger is left exactly as he was to be by the original contract, that is, he has a deed to the land subject to a total indebtedness of $15,000.

McClellan, on the other hand, holds his land subject to the original debt of $6500, which was secured by the whole tract, including the part deeded to Achziger, and to the $10,000 lien of the security held by Morris; the $8500 note, which was a second lien on the Achziger land, is reduced to $3500, and made a third lien; he is required to pay $411 fees to the attorneys of the Sanborn estate, and the costs of the entire suit. He is relieved of the Sanborn indebtedness, and, possibly, of a small part of the original $6500 debt, as Morris is directed to apply on it any balance of the $5000 after paying the Sanborn debt and attorneys' fees.

No reason appears for assessing McClellan with attor-

neys' fees in behalf of the Sanborn estate, which was not a necessary party to the suit on the plaintiff's theory that the two notes were invalid in the hands of Eckhardt and Morris. Nor was there any reason in any event for the allowance of any considerable sum as fees, since the appearance in behalf of the estate was merely nominal. Its lien was not involved, and could not be disturbed, or changed without the consent of the estate's representatives.

It conclusively appearing that because of the default of their agent, neither Achziger nor McClellan could carry out their agreement, it should be held that they were both equally in default as to it, and, as the court had no right to make a new contract for them, they should be restored to the *status quo.* That is, the deed from McClellan to Achziger, the Achziger-Roberts note of $6500, and the Mc-Clellan-Roberts note of $10,000 should all be canceled, saving to the holders of the two notes their rights, if any, against the Roberts estate on his endorsement. McClellan's entire tract should be held to be security for the $6500 note now owned by Morris, and for so much of the $5000 loaned by Eckhardt to Achziger as was used to pay the Sanborn estate note; also, for any amount credited on the $6500, as directed by the decree; for the total amount of which payment and credit McClellan should execute a note to Eckhardt, at the rate of interest borne by the Sanborn note, and for such time as the trial court deems reasonable, to be secured on McClellan's entire tract; subject only to the said $6500 indebtedness; provided always that McClellan elect to be restored to the *status quo* on the conditions above stated. The trial court by said decree should determine what, on the facts, is the liability of Achziger to Eckhardt, if any, on the $5000 note, it not appearing whether said note was executed voluntarily by Achziger, or as a part of the plan developed by the decree. A reasonable fee should be allowed the attorney of the Sanborn estate. The costs in this court should be assessed against Eckhardt and Morris, except only the cost of the bill of exceptions filed as an exhibit herein; each party paying his costs in

the court below, except only the Sanborn estate, whose costs shall be assessed to Achziger, Eckhardt and Morris, equally.

The judgment is reversed and the cause remanded with directions to enter judgment as above presented.

MR. CHIEF JUSTICE SCOTT not participating.

## On Petition for Rehearing.

It appears from the statement of counsel in petition for rehearing, that the $5,000 which was deposited by Eckhardt as a loan to Achziger, and which the court, by its decree distributed, has not yet been so distributed and applied. If the money is still in the registry of the court, Eckhardt will be permitted to withdraw the same on the surrender to Achziger of his note and releasing the deed of trust.

This $5,000 not having been devoted to the payment of the Sanborn estate mortgage and there being a cross-complaint in this action seeking to foreclose said mortgage, the matter of counsel fees for a foreclosure will not be determined as a part of this judgment. The parties involved in that matter will be left to proceed according to their rights and interests.

It is further claimed that the record shows payments by Roberts to McClellan of something over $1,700. It does not appear, however, that this money was paid upon the $10,000 note. At all events, Morris bought the note without any credits thereon. Whether the said payments should belong to Morris or to the Roberts estate is a matter not to be determined in this action.

The petition for rehearing is denied.