James P. JOHNSON, as Equity
Receiver for the Chilcott
Futures Fund, Plaintiff,

v.

Thomas D. CHILCOTT, Shearson/American Express, Inc., Shearson Lehman Brothers, Inc., Donald Cunningham, Sid Anders, and One or More John and/or Jane Does, Defendants.

Civ. A. No. 82–C–889.

United States District Court,
D. Colorado.

April 2, 1987.

Kenneth C. Groves, Denver, Colo., and Rodney R. Patula, Englewood, Colo., for plaintiff.

Deborah E. Cooper, New York City, and Steven Waters and Amy Clark, Denver, Colo., for Shearson/American Exp. and Shearson Lehman Bros.

Richard P. Slivka, Denver, Colo., for D. Cunningham.

Sid Anders, pro se.

Thomas Chilcott, pro se.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff as equity receiver for the Chilcott Futures Fund ("Fund") seeks damages allegedly sustained as a result of the defendant Thomas Chilcott's looting of the Fund. Of the seven claims for relief, I previously dismissed the first three federal claims on the ground that injuries from the alleged violations were sustained by individual investors and not the Fund. *John-son v. Chilcott*, 590 F.Supp. 204 (D.Colo. 1984). At a hearing held on February 26, 1986, I dismissed the fourth claim of common law fraud for the same reason. The remaining three claims are for conversion, negligence and breach of fiduciary duty.

From the mid–1970's through June of 1981, Thomas Chilcott obtained tens of millions of dollars from hundreds of investors by representing that their funds were being invested in a highly profitable commodities pool. A federal investigation begun in June 1981, revealed that Chilcott had not made the promised investments nor had he earned the profits he had reported. Instead he had operated a "ponzi scheme" which resulted in losing most of the investors' money.

In 1981, the Commodity Futures Trading Commission ("CFTC") sued Chilcott and the various investment entities under his control for violations of the Commodity Exchange Act. *Commodity Futures Trading Commission v. Chilcott Commodities Corp.*, No. 81–F–999 (D.Colo.). On June 25, 1981, Chief Judge Finesilver entered an order appointing a receiver to, *inter alia*, "institute, prosecute, ... and defend all suits ... as may ... be advisable or necessary for the protection, maintenance, operation, preservation, or recovery of the assets of said Defendants." This action is ancillary to that receivership.

Numerous motions for summary judgment and to strike various exhibits have been filed. I have considered the briefs and the arguments of counsel, and now set out my rulings in this memorandum opinion.

I. *Motion by Defendants Shearson and Cunningham for Partial Summary Judgment on the Plaintiff's Agency and Breach of Fiduciary Duty Claims and Motion to Strike Certain Exhibits Submitted by the Plaintiff in Opposition.*

Defendants Shearson Lehman Brothers and Donald Cunningham (hereinafter collectively referred to simply as "defendants") seek partial summary judgment on the plaintiff's agency and breach of fiduciary duty claims. Plaintiff alleges that the

defendants are liable because Chilcott was their agent when he looted the Fund or, alternatively, that the defendants breached a fiduciary duty owed to the Fund.

For purposes of this motion, the following facts are undisputed. From 1974 through 1977, Chilcott opened five commodity trading accounts at Hornblower & Weeks—Hemphill, Noyes, Inc. ("Hornblower"). Three of the accounts were in the name of Chilcott Portfolio Management, Inc. ("CPMI"), one was in Chilcott's own name, and one was in the names of Chilcott and Ned E. Collins as tenants-in-common. The customer agreement signed by Chilcott stated, "no one except the undersigned [Chilcott, CPMI, or Chilcott and Collins] has or will have any interest in any account opened by the undersigned with you [Hornblower] unless you are notified thereof in writing." The agreement provided that it would "enure to the benefit of [Hornblower and] any successor organization or assigns."

In June 1979, Shearson purchased the Denver office of a successor to Hornblower and succeeded by assignment to the Chilcott customer agreements. From June 1979 to June 1981, Shearson collected money from the five Chilcott accounts through commissions charged to the accounts. During the same time, Shearson provided Chilcott with telephone services, computerized commodity price quotations, computer software services and a Reuters news service.

### A. *Defendants' Motion to Strike Exhibits.*

Defendants have moved to strike certain exhibits relied upon by the plaintiff in his opposition to this motion for partial summary judgment. First, the defendants seek to strike the Affidavit of Ronald D. Tuttle on the ground that it is not admissable under Rule 701 of the Federal Rules of Evidence (hereinafter cited as F.R.E.) which states that non-expert testimony

"in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on perceptions of the witness and (b) helpful to a clear understanding of the testimony or a

clear determination of the fact and issue."

In his affidavit, Tuttle related a series of events that led to a conversation with the defendant Cunningham. Tuttle stated that "I told [Cunningham] that I was a member of the Chilcott Fund up in Fort Collins." Plaintiff relies on this affidavit, as well as other exhibits, to show that the defendants knew that Chilcott was trading with money belonging to third persons. In addition, Tuttle stated that as a result of the conversation he was generally reassured about Chilcott. He did not, however, set forth any specific representations by Cunningham that led him to this conclusion and stated that he had no "recollection of the concrete facts."

■ Defendants argue that this is a lay opinion based on insufficient supporting facts. Certainly that is not true with respect to the statement that Tuttle told Cunningham that he was a member of the Fund. As for the other observations, I find and conclude that these are well within the perception of the affiant. He need not remember the exact details of a conversation that occurred almost seven years ago in order competently to testify or provide an affidavit as to the effect of that conversation on him. Because this evidence touches on a critical fact issue, I further find and conclude that the testimony will be helpful to determination of the facts. Therefore, the motion to strike the Tuttle affidavit is denied.

Defendants argue that the affidavits of Arlis L. Roberts and Alan Morris Feldman should be struck on the same grounds. I similarly find and conclude that their statements and observations are within their respective perceptions as witnesses. The motion to strike the Roberts and Feldman affidavits is denied.

■ Defendants further argue that the Feldman affidavit is not properly authenticated because the telephone conversation Feldman asserted that he had with Cunningham may have taken place with an impostor aligned with Chilcott who posed as Cunningham. A telephone conversation

may be authenticated by voice identification under Rule 901(b)(5), F.R.E. Further, "familiarity with another's voice may be acquired either before or *after* the particular speaking which is the subject of the identification." (Emphasis added). *United States v. Watson,* 594 F.2d 1330, 1335 (10th Cir.1979), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). A *prima facie* showing of authenticity may be found in Feldman's testimony regarding his face-to-face meeting with Cunningham after the telephone conversation. The motion to strike Feldman's affidavit on the ground of lack of authenticity is denied.

Defendants next move to strike the deposition testimony of L. Lee Bosely and the attached exhibits 16 and 17 offered by the plaintiff to show that the defendants were aware that Chilcott was trading with money belonging to third persons. Defendants repeat their lack of authentication argument, this time as to a telephone conversation Bosely allegedly had with Cunningham. Defendants argue that Bosely did not adequately demonstrate that he in fact spoke with Cunningham because it is not clear whether the alleged conversation with Cunningham was an outgoing or incoming call. If it was an incoming call, the defendants speculate that the call might have been made by a Cunningham impostor.

■ Bosely was unclear, however, only about whether he or his secretary placed the call. There appears to be no ambivalence or doubt with regard to whether the call was incoming or outgoing. This amounts to substantial evidence of authentication sufficient to warrant sending the issue of authentication to a jury. *N.L.R.B. v. Carpet, Linoleum, and Resilient Tile Layers Local Union No. 419,* 213 F.2d 49, 52 (10th Cir.1954). Therefore I will consider this deposition testimony in ruling on the defendants' motion, because for purposes of the motion I must view the facts in the light most favorable to the plaintiff. *Angle v. N.L.R.B.,* 683 F.2d 1296 (10th Cir. 1982); *Bruce v. Martin-Marietta Corp.,* 544 F.2d 442 (10th Cir.1976). Accordingly, the motion to strike the Bosely deposition is denied. With respect to exhibits 16 and

17 attached to the Bosely deposition, they are properly considered because, although they are hearsay, they are admissible under F.R.E. 803(5).

■ Defendants further seek to strike excerpts from the deposition of Elaine Menter and attached Exhibit 1. Plaintiff offers two theories in opposition to the motion to strike. The first is that this testimony may be used to impeach a prospective witness, Andrea Aveline. This argument is unavailing because the defendants in their motion did not refer to or rely on Aveline's deposition. Plaintiff may not introduce Aveline's testimony in order to impeach it, and the fact that he may, under the Federal Rules of Evidence, attack the credibility of his own witness does not change this result. In addition, even if this evidence may be admitted for purposes of impeachment, I cannot consider it as substantive evidence. The second rationale offered by the plaintiff is that this testimony may be considered as substantive evidence that the defendants are engaged in subornation of perjury and as an admission by conduct that their case is weak. On the basis of the limited evidence that the plaintiff has offered to support this argument, I reject it. Therefore, I find and conclude that the deposition testimony of Elaine Menter should be stricken and that Exhibit 1 to the Menter deposition should be stricken as inadmissable hearsay.

Next, the defendants have moved to strike two letters written by Glen Worstel to Chilcott and an invoice from Parsec Systems dated "21–JUL–80." I have reviewed these documents and I find and conclude that they were properly authenticated during depositions. However, they appear to be hearsay and will not be considered as evidence of the truth of the matters asserted.

■ Defendants have further moved to strike Exhibit 16 filed by the plaintiff on February 24, 1986. This exhibit consists of letters discussing various services provided to Chilcott. Defendants argue that in order for this or any other document to be considered on a motion for summary judgment, it must be attached to an affidavit. I

reject this argument. The relevant inquiry is whether the evidence will be admissable at trial. *SEC v. American Commodity Exchange, Inc.*, 546 F.2d 1361 (10th Cir. 1976). I find that although these exhibits are not yet properly authenticated, and thus the proper foundation has not been laid, there is a substantial likelihood that the plaintiff could lay the necessary foundation if given the opportunity to take Chilcott's testimony. I will consider this evidence in ruling on the motion, pursuant to Fed.R.Civ.P. 56(f), but, because these letters are hearsay, I will not consider them for the truth of the matters asserted.

### B. *Breach of Fiduciary Duty.*

Plaintiff theorizes that during Chilcott's alleged looting, the defendants occupied a fiduciary relationship to the looted Fund. He further alleges that the defendants breached their fiduciary duty to the Fund by failing to properly supervise Chilcott's activities and failing to report those activities to Fund members. Defendants have moved for partial summary judgment on the seventh claim for relief to the extent that it is based on this theory.

In *Sherman v. Sokoloff*, 570 F.Supp. 1266 (S.D.N.Y.1983), such a theory was rejected. There, the plaintiffs had entered into a partnership with Sokoloff under which Sokoloff had invested the plaintiffs' money in platinum futures. Sokoloff had opened a platinum account with the defendant Rosenburg Commodities, a futures commission merchant ("FCM"). Sokoloff then had breached his agreement with the plaintiffs and quickly lost a large sum of money. Plaintiffs sought to hold Rosenburg liable for their losses on the ground that Rosenburg must have known of Sokoloff's fraudulent trading but failed to alert them to it. Rosenburg moved for summary judgment on the claims against it, and the trial court granted the motion, stating:

> "Our own research has located no cases where a broker (or FCM) in Rosenburg's position has been saddled with the obligation of monitoring and reporting the trading pattern of a person *in no way affiliated to him,* let alone a partner of plaintiffs. We decline the invitation to

impose such a duty." *Id.* at 1270 (Emphasis added).

Plaintiff does not attempt to distinguish *Sokoloff* but rather argues that the source of the fiduciary duty in this case is Shearson's duty not to commingle money belonging to one customer with money belonging to another, citing 17 C.F.R. § 4.24. That regulation imposes a duty on commodity pool operators. Plaintiff has not alleged that the defendants were commodity pool operators.

The key inquiry, however, is the degree to which Chilcott may have been "affiliated" with Shearson as an agent or in some other capacity. *Sokoloff* was based in part on the lack of such an affiliation. As more fully discussed below, the nature of the relationship between Chilcott and the defendants is the primary factual dispute at the heart of this litigation. Clearly there exists here a genuine issue of material fact that precludes granting summary judgment. Fed.R.Civ.P., Rule 56(c).

Defendants motion for partial summary judgment on the plaintiff's claim for breach of fiduciary duty is denied.

### C. *Plaintiff's Agency Claims.*

Plaintiff further seeks to hold the defendants liable on the ground that Chilcott was their agent. Defendants contend that there is insufficient evidence to establish an agency relationship.

■ When the facts surrounding an alleged agency relationship are in dispute, the question whether an agency existed is for the trier of fact. *Dailey v. Elicker,* 447 F.Supp. 436 (D.Colo.1978); *Marron v. Helmecke,* 100 Colo. 364, 67 P.2d 1034 (1937). Only where the facts are undisputed may the trial court determine, as a matter of law, whether or not an agency relationship existed. *Cheney v. Hailey,* 686 P.2d 808 (Colo.App.1984); *People v. Morrow,* 682 P.2d 1201 (Colo.App.1983). Here there are substantial factual disputes, particularly over whether the defendants knew that Chilcott was operating his accounts with money belonging to third persons. Therefore, the issue on this summary judgment

motion is whether there are genuine issues of material fact that preclude summary judgment.

■ There was no express agreement appointing Chilcott as the defendants' agent. An agency relationship, however, can be created by conduct. Sell, *Agency*, § 35 (1975); *Restatement (Second) of Agency* §§ 26, 27 (1958). The relationship may be created in either of two ways.

■ First, the principal and the agent, through written or verbal agreement or by conduct, may agree between themselves that the agent may act on behalf of the principal, or the principal may act in a manner that causes the agent to believe that the principal desires him to so act. In such a situation, the agent is said to have express or implied authority to act on behalf of the principal. *Restatement (Second) of Agency* § 26 (1958). Second, the principal may act in a manner that, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him. In such a case, the agent is said to have apparent authority. *Restatement (Second) of Agency* § 27 (1958). The distinction between the two theories rests on who receives the information from the principal.

The primary fact relied on by the plaintiff in the instant case is the agreement under which Shearson provided Chilcott numerous services that were paid for from commissions generated by the accounts. The parties have devoted great energy to arguing whether this agreement amounts to "fee-splitting" or merely grants a commission discount. Plaintiff has cited numerous CFTC decisions holding that fee-splitting is one indication of an agency relationship. *See e.g., In re Big Red Commodity Corp.*, 1984–1986 Comm.Fut.L.Rep. (CCH) para. 22,623 (CFTC June 7, 1985); *Bogard v. Abraham-Reitz & Co.*, 1984–1986 Comm.Fut.L.Rep. (CCH) para. 22,273 (CFTC July 5, 1984). Defendants have argued that the agreement is simply one by which Chilcott was given a discount based on the large volume of trades he transacted with Shearson. As such, the defendants argue that the agreement is not probative of an agency relationship.

I need not characterize the relationship as either fee-splitting or discounting in order to resolve this issue. The plain fact is that this relationship had elements of both. It is not a straight fee-splitting agreement because the accounts were held in Chilcott's name, or at least Chilcott was designated as agent for the accounts, and the services were provided to him. In most fee-splitting cases, the account is held in the name of disclosed third parties and a portion of the commissions charged to the accounts are paid to the alleged agent. On the other hand, this is not a simple fee-discount agreement. Plaintiff has raised at least an inference that Shearson was aware that the Chilcott accounts contained money belonging to third persons.

Accepting that fact as true for present purposes, it follows that Shearson collected commissions from Chilcott's trading in accounts that Shearson knew contained money of third parties. It then took some of this money and returned it, not to the third party owners, but to Chilcott. This is certainly different from the standard fee-discounting agreement in which an account is simply charged a lower than usual commission rate. The fact that the handling of this account was unusual in this respect is a factor that a jury might consider to be evidence of an agency relationship.

■ The fact that Chilcott agreed in writing not to allow any third party to have an interest in the accounts without first notifying Shearson is another factor the jury may consider, but it is not dispositive. If the jury were to believe that the defendants had knowledge that the accounts contained money belonging to third parties, they would not be required to find, based on the contract language alone, that no agency relationship existed. The fact that two parties both disavow an agency relationship between them does not preclude finding the existence of such a relationship. *Embeita v. Heinhold [Heinold] Commodities, Inc.*, 1984–1985 Comm.Fut.L.Rep. (CCH) para. 22,594 (E.D.Va.1985) [Available on WESTLAW, DCT database].

I would be reluctant, however, to send the agency issue to a jury on this evidence alone. In all of the cases cited by the plaintiff, there was substantially more evidence of an agency relationship than simply a fee-splitting agreement. For example, in *Embeita v. Heinhold [Heinold] Commodities, Inc.*, 1984–1986 Comm.Fut. L.Rep. (CCH) para. 22,594 (E.D.Va.1985) [Available on WESTLAW, DCT database], the plaintiff sought to hold Heinhold Commodities liable for violations of the Commodity Exchange Act committed by one Mordecai. The trial judge denied Heinhold Commodities, Inc.'s motion for summary judgment on the plaintiff's agency theory where, in addition to a fee-splitting agreement, the following facts were shown: First, the plaintiff initiated contact with Heinhold by calling its office, and Mordecai answered the phone. Second, Mordecai sent the plaintiff a number of forms to sign, all of which bore the Heinhold name. Finally, Mordecai had his own desk, telephone and quote machine at Heinhold's office.

A similar case is *In the Matter of Big Red Commodity Corp.*, 1984–1986 Comm. Fut.L.Rep. (CCH) para. 22,623 (C.F.T.C. June 7, 1985). There the defendant Rosenthal & Company appealed from a decision by an administrative law judge holding Rosenthal liable as a principal for the fraud of its agent Pinckney. It was undisputed that Pinckney was Rosenthal's agent, at least for some purposes, because Pinckney had been hired by Rosenthal to be a branch office manager. Pinckney operated out of an office with the name Rosenthal printed on the door, and Rosenthal paid all the expenses incurred in connection with operating the branch office. In light of these facts, the Commission concluded that Pinckney was indeed Rosenthal's agent.

Likewise in *Bogard v. Abraham-Reitz & Co.*, 1984–1986 Comm.Fut.L.Rep. (CCH) para. 22,273 (C.F.T.C. July 5, 1984), the Commission found "overwhelming" evidence that Abraham was the defendant's agent. In addition to a fee-splitting agreement and the provision of services by the defendant, Abraham used the defendant's publications and customer forms, and was given daily trading advice by one of the defendant's account executives.

It is necessary to review all of the facts in the instant case in a light most favorable to the plaintiff to determine if there are sufficient indicia of an agency relationship, beyond the asserted "fee-splitting," to warrant keeping this issue in the case. First, under the agreement between Chilcott and Shearson, Shearson did not simply pay Chilcott money; rather, Shearson provided Chilcott services that he used in operating the Fund. Second, there is evidence that Chilcott used these services to manage the Fund. Third, Shearson continued to provide these services during time periods when trading in the accounts was very slow, and the payments made by Shearson for the services exceeded the commissions received from the accounts. Fourth, there is evidence of some direct contact between a Shearson employee and members or owners of the Fund. This evidence of direct contact is not very substantial, and I have some question as to whether the knowledge is attributable to Shearson. However, I will accept that inference on the current state of the record. Finally, there is evidence that certain of the payments for computer software were made to a company owned solely by Chilcott.

■ The above facts demonstrate a triable issue of fact on whether Shearson's representations and conduct vis-a-vis Chilcott were sufficient to create an agency relationship under a theory of implied or express authority. A jury might well be justified in finding, on evidence demonstrating the above facts, that Shearson acted in such a manner as to cause Chilcott to believe that Shearson desired him to act as its agent.

Plaintiff has presented no evidence, however, that any of the above facts, including the asserted fee-splitting agreement, were known to any of the Fund members or owners. In fact, the plaintiff's evidence suggests only that certain of the Fund members relied on Shearson or Cunningham as references for Chilcott. Therefore, none of these facts appears relevant under

an apparent authority theory because none involves a representation by the alleged principal, Shearson, to the Fund members. To the extent that the plaintiff's claim rests on this theory, it fails on the facts thus far elicited.

Accordingly, I conclude that the defendants' motion for partial summary judgment on the plaintiff's claims based on an implied agency must be denied. I decline, however, to rule at this early stage of the lawsuit that the plaintiff is barred from attempting to prove an agency relationship based on the doctrine of apparent authority. Plaintiff will be given the opportunity at trial to offer additional evidence on this issue. Obviously I reserve ruling on whether the apparent authority theory should go to the jury until after I have heard all of the plaintiff's evidence.

Defendants' motion for partial summary judgment on the plaintiff's agency claims is denied.

II. *Motion for Partial Summary Judgment By Defendants Shearson and Cunningham on Plaintiff's Claims for Aiding and Abetting.*

A. *Defendants' Motion to Strike.*

Defendants have moved to strike certain exhibits offered by the plaintiff in opposition to their motion for summary judgment directed at the plaintiff's aiding and abetting claim. For the reasons stated above, the defendants' motions to strike excerpts from the Bosley transcript and attached Exhibits 15–17 as well as the Tuttle affidavit are denied. Defendants' motion to strike the Menter deposition and attached exhibits is granted for the reasons stated above.

Defendants have moved to strike copies of letters written by or on behalf of Chilcott investors, attached as Exhibit 2 to the plaintiff's February 7 memorandum. Plaintiff argues that he will be able to authenticate these documents at trial through Chilcott's testimony, but that at present he is unable to obtain an affidavit from Chilcott. I accept this argument for the time being and will consider these documents for purposes of the motion. *See*

Fed.R.Civ.P. 56(f). However, they are hearsay and will not be considered as evidence of the truth of the matters asserted.

■ Next, the defendants have moved to strike a memorandum dated March 7, 1974, included as part of Exhibit 4 to the plaintiff's February 7 memorandum. Plaintiff has offered this document as evidence of the knowledge of the defendant Sid Anders, a Shearson employee. The memorandum is not to Anders but is addressed to Robert Bardwell; however, the memorandum indicates that a carbon copy was sent to Anders. In addition, in the space next to this notation there is a check mark, suggesting that this is the copy that was sent to Anders. I find and conclude that this memorandum may not be considered for purposes of the instant motion because there is inadequate evidence that it came to Anders' attention. I base this finding primarily on the fact stated by the plaintiff's counsel at Anders' deposition that this document was retrieved from the Chilcott documents taken over by the Receiver in 1981. If the document with the check mark was found in Chilcott's files, it is unclear whether it ever reached Anders' attention. Of course I make no ruling on admissibility of this document at trial provided that adequate foundation is laid.

Defendants have moved to strike an affidavit of Nancy J. MacDonald, attached as part of Exhibit 4 to the plaintiff's February 7 memorandum. This affidavit adequately demonstrates that it is based on personal knowledge and the motion is therefore denied.

Copies of checks attached as Exhibit 6 to the plaintiff's February 7 memorandum are also subjects of a motion to strike. These checks have been properly authenticated by Anders in his deposition. They constitute admissions by Anders and are not excludable hearsay.

Finally, the defendants have moved to strike copies of wires and checks included as the first five pages of Exhibit 9 to the plaintiff's February 7 memorandum. This motion to strike is granted for purposes of this summary judgment motion, because the plaintiff has not offered sufficient evi-

dence to lay an adequate foundation for these documents.

B. *Aiding and Abetting Liability.*

Plaintiff alleges that the defendants are liable for aiding and abetting Chilcott's conversion and his breaches of fiduciary duty. Defendants have moved for summary judgment on the ground that there is insufficient evidence to justify proceeding to trial on the aiding and abetting claim.

A substantial body of law has developed with respect to aiding and abetting securities law violations. There are three prerequisites to establish liability on this theory:

"(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;

(2) 'knowledge' of this violation on the part of the aider and abettor; and

(3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." *Bloor v. Carro, Spanbock, Londin, Rodman, & Fass,* 754 F.2d 57, 62 (2d Cir.1985). *Accord: IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir. 1980); *Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38 (2d Cir.1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir. 1975); *SEC v. Coffey,* 493 F.2d 1304 (6th Cir.1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975); *Landy v. Federal Deposit Insurance Corp.,* 486 F.2d 139 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

Defendants do not contest the first element, and therefore I assume for purposes of this motion that it is established by Chilcott's admitted conduct. Defendants argue that the plaintiff has produced no evidence that Shearson's conduct contributed to proximately cause the primary violation. This argument is basically addressed to the third above listed element in that the defendants argue that Shearson did not provide any "substantial assistance" to bring about the primary violation.

Before addressing this argument, it is necessary to delineate the primary violation for which the plaintiff seeks recovery. Plaintiff does not and cannot seek recovery for any assistance Shearson provided to Chilcott in raising money for the Fund. The Fund obviously did not suffer any loss as a result of these activities. *Johnson v. Chilcott,* 590 F.Supp. 204 (D.Colo.1984); *see also Bloor,* 754 F.2d 57 (2d Cir.1985). Rather, the plaintiff's claim is that Shearson aided and abetted Chilcott's looting of the Fund. Therefore, the evidence submitted by the plaintiff to support this claim must be considered with a view to determining whether it tends to establish that Shearson aided and abetted Chilcott's looting.

The last two elements of aiding and abetting liability cannot be viewed in a vacuum but must be considered together. Thus, "the *scienter* requirement scales upward when the activity is more remote." *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 95 (5th Cir.1975). Furthermore, where an alleged aider and abettor owes a fiduciary duty to the defrauded party, recklessness may satisfy the scienter requirement for secondary liability. *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909 (2d. Cir.1980); *Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38 (2d Cir.1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

Plaintiff has submitted affidavits and exhibits that, viewed in a light most favorable to him, establish that: *First,* Cunningham and Anders knew during relevant time periods that Chilcott was operating a commodity pool and was trading with money belonging to third persons. *Second,* Shearson provided Chilcott numerous services that were used in management of the Fund. *Third,* in April 1981, Shearson waived a requirement that Chilcott obtain an audited financial statement. *Fourth,* Cunningham did not require, cause, or request Chilcott to register with the CFTC as an associated person of Shearson, as a commodity trading advisor, or as a commodity pool operator. *Fifth,* as a result of a conversation with Cunningham, at least one

investor was reassured that Chilcott's failure to register with the CFTC or the SEC was not a problem. *Sixth,* Cunningham told Charles Monaghan, a Fund member, that 250 silver contracts were on order and that their average purchase price was less than twelve dollars. *Seventh,* Anders received management fees from Chilcott and handled telephone, mail and personal contact with members of the Fund while so employed.

 This evidence portrays an environment in which Chilcott and the defendants worked closely in managing the Fund. A jury might reasonably conclude that in these circumstances, the defendants did not merely help Chilcott to raise money for the Fund, but went beyond that to aid him in operating the Fund. In addition, it is reasonable to infer that Shearson did not provide merely normal business services. *Cf., Armstrong v. McAlpin,* 699 F.2d 79 (2d Cir.1983). Indeed, the evidence suggests that two of Shearson's employees may have actively helped Chilcott to deceive investors. If the jury were to find these inferences from the circumstantial evidence, it might reasonably conclude that the defendants substantially assisted Chilcott in looting the Fund. *See Rolf v. Blyth, Eastman Dillon and Co. Inc.,* 570 F.2d 38 (2d Cir.1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

Defendants' reliance on *Bloor v. Carro, Spanbock, Londin, Rodman, & Fass,* 754 F.2d 57 (2d Cir.1985) is misplaced. That case is distinguishable because there was no evidence to suggest that the defendant had participated in management of the insolvent Fund. Furthermore, there was no evidence in *Bloor* that the defendant aided in concealing improprieties by the Fund's operator. While the evidence of participation and concealment in this case is certainly not overwhelming, clear, obvious evidence of such operations is seldom available in any case, for the nature of the fact to be proved, concealed participation, does not lend itself to demonstration by direct evidence. I conclude that there is sufficient substantial evidence to withstand the instant motion for partial summary judgment, and that motion is denied.

With respect to the scienter requirement, case law establishes that if Chilcott was the defendant's agent, aiding and abetting liability could be imposed if Shearson was reckless in disregarding Chilcott's looting. *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909 (2d Cir.1980); *Rolf,* 570 F.2d 38. As stated in part I.B. of this opinion, the agency issue will remain in the case for trial. Therefore, for purposes of this motion I must consider Chilcott to be the defendants' agent and bear in mind that such recklessness may suffice to furnish scienter. Once again, while the evidence that the defendants recklessly disregarded Chilcott's looting is not strong, it is sufficient to withstand a motion for partial summary judgment.

III. *Motion of Defendants Shearson and Cunningham for Partial Summary Judgment on their Fraud-Based Counterclaims; Motion of Shearson to Amend it Answer to Add a Defense, Counterclaim, and Cross-claim and for Partial Summary Judgment; Plaintiff's Cross-motion for Dismissal or, in the Alternative, Summary Judgment on the Defendants' Counterclaims.*

On December 3, 1985, Shearson and Cunningham moved for partial summary judgment on certain elements of their fraud-based counterclaims. On December 11, 1985, Shearson moved to amend its answer to add a defense, counterclaim and cross-claim based on breach of contract. At the same time, Shearson moved for partial summary judgment on this newly asserted cross-claim. On January 3, 1986, the plaintiff moved to dismiss or, in the alternative, for summary judgment on all of the defendants' counterclaims in this action on the ground, *inter alia,* that this court lacks subject matter jurisdiction over these counterclaims.

Defendants may not assert any counterclaims in this action unless they first present them as claims in the receivership action before Chief Judge Finesilver. He has jurisdiction over the receivership pro-

ceeding involving the Fund in Case No. 81–F–999. As part of that action, Judge Finesilver entered an order dated June 25, 1981, that declared:

"It is further ordered that, except with leave of Court during the pendency of the Receivership ordered herein, all creditors and other persons seeking money damages of said defendants [Chilcott et al.] and all others acting on behalf of such creditors and other persons ... are hereby prohibited from:

A. Commencing, prosecuting, continuing, or enforcing any suit or proceeding."

Plaintiff has moved to dismiss these counterclaims on the ground that the defendants have not sought permission from the receivership court to file them in this action.

At the February 26, 1986, hearing, I ordered the defendants to file a petition in the receivership action seeking leave to assert the cross-claims and counterclaims already asserted in this action and for leave to assert any new counterclaims or cross-claims. By order dated April 15, 1986, this petition was denied by Judge Finesilver on the ground that both the application and the defendants' identification of the existence and nature of its claims against the estate were untimely.

▄▄▄ In view of Judge Finesilver's order, I find and conclude that the counterclaims filed by the defendants in this action must be dismissed. Defendants will be allowed, however, to assert crossclaims against Chilcott *in personam*, to the extent that they do not affect the receivership estate or result in claims against it. Defendants also will be allowed to add the defense of breach of contract by amendment if they so desire. Defendants Shearson and Cunningham shall file an amended answer within twenty days so that their answer will be in full compliance with this order.

Accordingly,

IT IS ORDERED that:

1) the motions of Shearson and Cunningham to strike certain exhibits attached to the plaintiff's memoranda in opposition to the defendants' motions for partial summary judgment are granted in part and denied in part in accordance with this order;

2) the motions of the defendants Shearson and Cunningham for partial summary judgment on the plaintiff's claims based on agency and breach of fiduciary duty are denied;

3) the portion of the motion of Shearson and Cunningham for partial summary judgment (filed December 3, 1985) that remains at issue is denied (at oral argument on February 26, 1986, I granted the defendants' motion on the plaintiff's fourth claim for relief);

4) Shearson's motion to amend its answer to add a defense, counterclaim, and cross-claim and for partial summary judgment is granted in part and denied in part in accordance with the terms of this order, and Shearson and Cunningham shall file an amended answer within twenty days that complies with this order; and,

5) the plaintiff's cross-motion for dismissal or, in the alternative, summary judgment upon those counterclaims is granted.