This is an appeal from a judgment of the Circuit Court of Madison County, entered after a nonjury trial, finding that American National Bank of Huntsville (American National), defendant below, was not liable in conversion to J. Gordon Neely Enterprises, d/b/a Midas Muffler (Neely), plaintiff below. The conversion count was based upon a total of 21 checks drawn by Neely, 19 made payable to American National and two made payable to B. Louise Bradshaw. The amount on each of twelve checks was raised and nine checks were unaltered, and all were illegally cashed or deposited by Bradshaw, a former part-time bookkeeper for Neely. The lower court found that American National acted within commercially reasonable standards when it cashed or deposited these checks for Bradshaw, and that Neely's negligence substantially contributed to the material alterations. Furthermore, American National properly paid out on the unaltered checks, since they were bearer paper and were validly negotiated upon delivery. Accordingly, it held in favor of American National. We affirm.
Mr. and Mrs. Neely, the owners and operators of J. Gordon Neely Enterprises, became acquainted with Bradshaw in 1976 when, as a Kelly Girl, she was hired by the company's stockholder accountant to assist him with their account. Mrs. Neely became friendly with Bradshaw and hired her part-time to teach her how to keep the corporate books. Since 1960, Mrs. Neely had performed all of the in-house bookkeeping duties by herself.
The corporate bank account was maintained at First Alabama Bank of Huntsville, N.A. (First Alabama), but Neely accepted Bradshaw's recommendation that the company open a second checking account at American National for personal expenditures and for the corporate payroll. She explained that checks could be drawn on the First Alabama account to fund the second account at American National. Bradshaw also kept her personal checking account at American National. Mr. and Mrs. Neely signed the bank signature card and the corporate resolution, which stated, among other things, that American National was authorized to pay out funds, on either bearer or order paper, to any of the signatories. Bradshaw was entrusted with these documents to return them to the bank, and without the knowledge or authorization of the Neelys, signed the signature card and added her name in a noticeably different type.
The following incidents complained of took place between February 25, 1977, and January 27, 1978. Bradshaw filled out checks drawn on the First Alabama account, except for two drawn on the American National Account, made payable to American National and with a large space to the left of the amount written on the designated lines. Mrs. Neely signed these checks being fully aware of these large gaps. She admitted that she never left spaces like that on her personal or corporate checks because it could facilitate alterations, but Mrs. Neely never questioned Bradshaw's practice of doing so because she yielded to Bradshaw's superior knowledge.
Bradshaw altered the checks either by adding a digit or two to the left of the original amount, or by raising the first digit after using liquid erasure. She then made a split deposit by depositing the original amount into Neely's American National payroll account, and depositing to her account the difference between the original and altered amounts. On some occasions she took the difference in cash without depositing it to her account. On those checks that were not raised, she either cashed them *Page 889 
and kept the money, or deposited them to her account, or deposited part of the check into the Neely account and kept the rest.
Prior to Bradshaw's employment, Neely's bank statements were mailed to it. But afterwards, Bradshaw arranged with both banks to allow her to pick them up. After a while, Mrs. Neely complained to the banks about this, and eventually the statements were mailed. After Bradshaw picked up the monthly statements and items, she realtered them to reflect the original amounts by using liquid erasure. Together, the two women reconciled the statements with Mrs. Neely calling out the information from her journal entry and with Bradshaw responding from the bank statements and items. Consequently, Mrs. Neely never saw the altered checks or the statements. Even when the statements were mailed, Mrs. Neely never opened them and she never reconciled the statements without Bradshaw. A new accountant hired in the latter part of 1977 discovered the defalcations, totalling $17,005.18.
Neely filed a complaint against Bradshaw and American National for conversion, and the trial court severed the claims. A consent judgment was entered against Bradshaw for $8,000.00. Neely withdrew its jury demand, and the allegations against American National were heard without a jury. The trial court entered a judgment in favor of American National from which Neely appeals.
The issue is whether the lower court erred in holding American National not liable in conversion to Neely when it paid out proceeds to one not named as a payee and when it remitted proceeds on altered checks.
First, Neely contends that the bank converted its funds because it paid out proceeds to Bradshaw when she was not named as payee. We disagree. The checks at issue were made payable to the order of American National as opposed to being drawn to J. Gordon Neely Enterprises, and none of them was endorsed restrictively "For Deposit Only" into Neely's specially designated and numbered account. The bank's expert witnesses testified that a check drawn payable to the order of a bank is recognized in the banking profession as equivalent to a check made payable to the order of cash. Legally, therefore, the instrument becomes bearer paper, Code 1975, § 7-3-111, and is properly negotiated by delivery alone, Code 1975, § 7-3-202
(1). Since these checks were bearer paper and were validly negotiated when Bradshaw delivered them for presentment, American National is not liable for paying to her the proceeds even though she was not named as payee.
Neely also relies heavily upon the proposition that
 It is generally held that a check or draft drawn to the order of a bank precludes the diversion of the proceeds of it to a use other than that of the drawer, and that such diversion can be justified only by proof of authority from drawer.
10 Am.Jur.2d Banks § 560 (1963).
However, overlooked by Neely, cited within the same paragraph from which it quotes, is the following:
 [B]ut . . . if the drawer has clothed his agent with apparent authority to receive the proceeds of such check, the bank is not negligent in, and is not liable to the drawer for, paying, in reliance upon such apparent authority, the proceeds of such check to such agent contrary to his actual authority, if the agent should misappropriate such proceeds.
10 Am.Jur.2d Banks § 560 (1963).
The record in this case amply supports the finding that Bradshaw was apparently, if not actually, authorized to receive the money; therefore, the proceeds were not diverted to a use inconsistent with the drawer's intentions.
Neely clothed her with the authority to act on its behalf by entrusting her to pick up and to return the documents necessary to open the American National checking account. Additionally, from the bank's perspective, Bradshaw was actually authorized to withdraw and to receive the corporate funds because the corporate documents on *Page 890 
file at the bank explicitly granted her the authority to do so. Although her typewritten name on these forms was different in type from Mr. and Mrs. Neely's, there was testimony at trial upon which the trial court could conclude that the bank's actions were commercially reasonable in this regard.
Bradshaw also received ostensible authority to act for the company when it allowed her to make bank deposits and when it permitted her, albeit reluctantly, to pick up the monthly statements. Moreover, aside from the authority granted by Neely's corporate resolution, it was shown to be customary in the community for a bank to pay cash to an employee out of the corporate account or to make a split deposit into the employee's account out of the corporate check. Often, the employee is sent to get the money for the office petty cash box out of the corporate account. The employee's deposit into the personal account out of the business account may very well represent the employee's pay.
In sum, the lower court did not err in not holding American National liable, because the bank paid the proceeds out on properly negotiated bearer paper and because it did not unlawfully divert those funds beyond the drawer's intentions inasmuch as the facts indicate that Bradshaw was apparently authorized to receive the money.
Next, Neely alleges that American National is liable for paying out on altered instruments. Both parties rely upon Code 1975, § 7-3-406, stating:
 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.
Neely argues that American National did not pay the instruments according to commercially reasonable standards because the checks allegedly bore visible marks of alteration. American National contends that Neely is precluded from asserting the material alterations as a basis for liability because Neely's negligence substantially contributed to the alterations by leaving large spaces to the left of the amount designation, and by entrusting the same employee with writing the checks and reconciling the bank statements without the protection of internal corporate controls.
We must first resolve whether American National acted in a commercially reasonable manner, because unless the bank acted reasonably it cannot assert the defense that Neely's negligence substantially contributed to the alterations. Commercial CreditEquipment v. First Alabama Bank, 636 F.2d 1051 (5th Cir. 1981);First Federal Sav. Loan Ass'n. v. Alabama Nat. Bank,372 So.2d 350 (Ala.Civ.App. 1979); East Gadsden Bank v. First CityNat. Bank of Gadsden, 50 Ala. App. 576, 281 So.2d 431 (1973). American National produced expert witnesses testifying that although some of the words and numbers on the amount designation lines were slightly misaligned, and although a few checks visibly contained liquid erasure, the bank did not violate reasonable commercial standards when it paid out on these particular checks to Bradshaw. It was stated that the decision of whether to pay a particular check that may have appeared to be somewhat irregular on its face was based entirely upon a judgment call under the particular circumstances of that check. Based upon the judgment call surrounding the decision to pay each check, and after examining the checks exhibited, the trial court concluded that American National had acted in a commercially reasonable fashion under the circumstances. Inasmuch as this fact issue was found in favor of American National, the nonjury finding will stand on appeal because it was not plainly and palpably erroneous. Staggv. Van Sant, 390 So.2d 620 (Ala. 1980).
After resolving the threshold question of the commercial reasonableness of the bank's actions, we must next determine whether Neely, by its negligence, substantially contributed to the facilitation of the alterations. *Page 891 
The Uniform Commercial Code does not define the negligence which will support the defense of § 7-3-406, and instructs that it is an issue strictly left to the fact-finder on a case by case approach. Code 1975, § 7-3-406, Comment 3. The official comment does advise, however, that "[n]egligence usually has been found where spaces are left in the body of the instrument in which words or figures may be inserted." Code 1975, §7-3-406, Comment 3. See also Goldsmith v. Atlantic Nat. Bank ofWest Palm Beach, 55 So.2d 804 (Fla. 1951); Leonard v. NationalBank of West Virginia at Wheeling, 150 W. Va. 267, 145 S.E.2d 23
(1965). It is undisputed that Mrs. Neely signed the checks fully aware of the large gaps in front of the amount.
Similarly, two other examples of negligence are supported by the record: no inquiry was made into Bradshaw's veracity, although it was rumored that previously she had been in trouble with embezzlement in Tennessee, see Commercial Credit Equipmentv. First Alabama Bank, supra; and Neely failed to maintain internal controls so that the employee writing the checks was not also the principal person reconciling the bank statements,see Von Gohren v. Pacific Nat. Bank of Washington, 8 Wn. App. 245, 505 P.2d 467 (1973); Huber Glass Co. v. First Nat. Bank ofKenosha, 29 Wis.2d 106, 138 N.W.2d 157 (1965); Annot., 67 A.L.R.3d 144, 152 (1975).
Although each state defines it separately, Alabama construes the phrase "substantially contributes," Code 1975, § 7-3-406, to mean that the drawer's negligence must proximately cause the making of the alteration. Commercial Credit Equipment v. FirstAlabama Bank, 636 F.2d 1051 (5th Cir. 1981); East Gadsden Bankv. First City Nat. Bank of Gadsden, 50 Ala. App. 576,281 So.2d 431 (1973). Particularly pertinent to this case is the following description of proximate cause:
 When a person by his negligence produces a dangerous condition of things, which does not become active for mischief until another person has operated upon it by the commission of another negligent act, which might not unreasonably be anticipated to occur, the original act of negligence is then regarded as the proximate cause of the injury which finally results.
Goodwyn v. Gibson, 235 Ala. 19, 21, 177 So. 140, 142 (1937), cited with approval in Lawson v. General Telephone Co. ofAlabama, 289 Ala. 283, 289, 267 So.2d 132, 138 (1972). Based upon a thorough and sifting review of the record, we conclude that the accumulation of Mrs. Neely's negligent conduct set in motion an unfortunate chain of events which proximately culminated in the alterations, thus establishing Neely's substantial contribution.
We will not disturb these findings that Neely's negligence substantially contributed to Bradshaw's alterations, because they are not clearly and patently erroneous. Therefore, because American National acted in a commercially reasonable manner and Neely's negligence substantially contributed to the material alteration resulting in the bank's payment to Bradshaw, Neely cannot recover from American National.
Based upon the foregoing analysis and conclusions, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.