The PEOPLE of the State of Colorado, Complainant,

v.

Raymer Martin RHODES, II, Attorney–Respondent.

No. 91SA31.

Supreme Court of Colorado, En Banc.

June 3, 1991.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Atty.-respondent not appearing.

PER CURIAM.

In this attorney discipline case the respondent, Raymer Martin Rhodes, II, was charged with five counts of professional misconduct. When respondent failed to answer the complaint, a default was entered against him by a hearing board of the Supreme Court Grievance Committee, pursuant to C.R.C.P. 241.13(b); *People v. Dohe*, 800 P.2d 71 (Colo.1990); *People v. Richards*, 748 P.2d 341 (Colo.1987). The hearing board ultimately recommended that the respondent be disbarred for his professional misconduct, and a hearing panel adopted that recommendation. We agree that the respondent's professional misconduct warrants disbarment.

I

The respondent was admitted to the Bar of Colorado on October 17, 1980. Accordingly, he is subject to the jurisdiction of this court and its Grievance Committee. C.R.C.P. 241.1(b).

II

A

In April of 1988, Timothy R. Scott was appointed personal representative of his deceased wife's estate. The respondent served as Scott's attorney.

In May 1989, at the conclusion of a civil lawsuit, the estate was ordered to convey certain real property to a purchaser who had deposited a sum with the trial court in connection with the litigation. The trial court ordered the funds, totalling approximately $7,300.00, to be paid to a third party for disbursement at the closing. In June of 1989, subsequent to the closing, the escrow agent responsible for disbursement of contractually-based payments issued two checks, each in the amount of $596.29, to the estate in care of the respondent. The escrow company later issued a third check for the same amount when respondent represented that he had lost one of the earlier checks. This representation was false. The respondent cashed the three checks and converted the sums to his own use.

In July of 1989, the respondent delivered a check issued on his office account in the amount of $1,714.05 to Scott and informed Scott that the check represented the proceeds paid to the estate at the closing. The check proved uncollectible, however, and the respondent did not comply with Scott's requests to furnish those proceeds. Scott ultimately filed a civil action against the respondent to recover the proceeds actually due the estate. A judgment for approxi-

mately $6,000 entered in that case against the respondent has not been satisfied.

## B

In early 1988, the respondent was engaged by the Acceleration National Insurance Company to represent three real estate broker insureds in connection with multiple claims asserted against them by several parties in connection with a real estate transaction. In June of 1988 two participants in the transaction, Scott and Jill Ingersoll, filed claims for breach of contract, breach of fiduciary duty, negligence and outrageous conduct against the three brokers in the pending civil lawsuit. The Ingersolls requested punitive as well as actual damages.

The respondent did not inform the brokers, the insurance company or the company's adjuster of the fact that the Ingersolls had asserted a punitive damages claim. The respondent also failed to advise the brokers that the contract of insurance did not apply to punitive damages awards. To the contrary, the respondent informed one or more of the brokers on several occasions that all damage claims asserted by the Ingersolls were subject to coverage under the contract of insurance.

On April 21, 1989, a jury returned a verdict in the civil action against the brokers and awarded the Ingersolls damages, including $15,000 in punitive damages. The respondent did not advise his clients of their rights to seek a stay of execution of the judgment, to file post-judgment motions or to file a notice of appeal. When the respondent failed to answer inquiries by the Ingersolls' attorney concerning the possibility of voluntary payments on the judgment lien, garnishment and execution proceedings were instituted against the respondent's clients.

At a later date, the respondent informed the Ingersolls' attorney by letter that a draft to settle the matter could be anticipated within a week. The respondent subsequently informed the attorney that a settlement check had been received and returned to the insurer because of an unacceptable restrictive endorsement. These statements were false; as of the date of the respondent's initial letter, the insurance company was unaware of the outcome of the litigation.

## C

In October of 1988, the respondent obtained a loan in the amount of $15,000 from Clarence Wiley. In connection with the transaction, the respondent executed a promissory note in favor of Wiley for that amount, payable on or before December 25, 1988, and gave Wiley a document seemingly executed by one Ray Mayer as president of the Western Slope Investment and Development Company (Western), purporting to be a note for $40,000 payable by Western to the respondent. The respondent also provided Wiley with a copy of a deed of trust seemingly executed by Mayer as president of Western which purportedly encumbered property owned by the company and appeared to constitute security for the $40,000 note. The respondent initially told Wiley that the original deed of trust was in the process of being recorded, and later informed Wiley that an error in the acknowledgement portion of the deed of trust was being corrected.

The respondent later admitted that he had fabricated both documents, had signed Mayer's name to them without authorization, and had notarized Mayer's forged signature on the deed of trust. Wiley ultimately obtained a default judgment against the respondent, for the principal amount of $15,000, which judgment has not been satisfied.

## D

On April 14, 1989, a deed of trust was recorded with the La Plata County Clerk and Recorder. The document appeared to have been executed by the respondent's wife and notarized by a Gloria A. Freitag. Although a notarial seal issued to Freitag was affixed to the document, she did not notarize the signature. The respondent forged the signatures of his wife and of Freitag on the document and affixed Frei-

tag's seal to the document without her knowledge.

## E

The respondent was notified of the request for investigation in this case by certified and regular mail. The respondent failed to claim the certified mailings and failed to respond to the regular mailings. Demand letters mailed to the respondent's business and home addresses, requesting answers to the request for investigation were returned to the Committee.

## III

■ While representing Timothy Scott, the respondent violated DR 1–102(A)(1) (violation of a disciplinary rule), DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation), DR 7–101(A)(3) (causing intentional damage to a client), DR 9–102(A) (failing to preserve identity of client funds), and DR 9–102(B)(1) (failing to promptly notify client of receipt of client funds). The respondent converted client funds and falsely informed an escrow agent that he had lost a check, in order to obtain additional sums for his own personal benefit. These several acts of fraudulent misconduct warrant disbarment. *See People v. Gerdes*, 782 P.2d 2 (Colo.1989); *People v. Shafer*, 765 P.2d 1025 (Colo.1988); American Bar Association *Standards for Imposing Lawyer Sanctions*, 4.11 (hereinafter ABA *Standards.*)

■ In representing his broker clients, the respondent violated DR 1–102(A)(1) (violation of a disciplinary rule), DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation), DR 6–101(A)(3) (neglect of a legal matter), DR 7–101(A)(1) (failing to seek lawful objectives of client), DR 7–101(A)(2) (failing to carry out contract of employment for professional services), and DR 7–101(A)(3) (prejudicing or damaging a client). The respondent not only neglected the case, to his clients' severe detriment, but also purposely misled his clients with respect to the availability of insurance proceeds to cover the pending punitive damages claim. Sub-

sequent to the entry of judgment in the case, the respondent continued to ignore his clients' interests and fabricated information designed to mislead opposing counsel. Such continuous and intentional misconduct is sufficiently egregious to warrant imposition of the sanction of disbarment. *See* ABA *Standards* 4.41(b).

■ The respondent again demonstrated his willingness to engage in fraudulent, deceitful and criminal conduct for his own benefit in the course of obtaining the loan from Wiley and in affixing the names of his wife and a third person to a recorded document. In addition to further violations of DR 1–102(A)(1) and DR 1–102(A)(4), such misconduct violates DR 1–102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law) and C.R.C.P. 241.6(5), and of itself merits disbarment. *See* ABA *Standards* 5.11.

It must also be noted that the respondent's failure to respond to the request for investigation and other communications from the Grievance Committee violated C.R.C.P. 241.6(7). On March 18, 1989, a letter of admonition was sent to the respondent by the Grievance Committee as a result of his failure to answer an earlier request for investigation. In addition, this court has ordered the respondent suspended from the practice of law for a period of one year and one day for professional misconduct strikingly similar to many of the acts here recited. *People v. Rhodes*, 803 P.2d 514 (Colo.1991).

As indicated, imposition of the sanction of disbarment is merited for any one of the respondent's acts of misconduct. In addition, as the hearing board concluded, the following aggravating factors are present in this case: a prior disciplinary record (ABA *Standards* 9.22(a)); dishonest motive (ABA *Standards* 9.22(b)); a pattern of misconduct (ABA *Standards* 9.22(c)); multiple offenses (ABA *Standards* 9.22(d)); bad faith obstruction of the disciplinary process (ABA *Standards* 9.22(e)); and indifference to making restitution (ABA *Standards* 9.22(j)). Under all of the circumstances here present, any sanction other than dis-

barment would demean the grievance process itself.

## IV

For the above reasons, it is ordered that the respondent, Raymer Martin Rhodes, II, be disbarred and that his name be stricken from the role of lawyers authorized to practice before this court, effective on the date of this opinion. C.R.C.P. 241.21(a). It is further ordered that prior to seeking readmission the respondent shall pay the sum of $6,000 to Timothy R. Scott, as personal representative of the estate of Sandra Scott, and $15,000 to Clarence Wiley, together with interest thereon on said sums computed pursuant to section 13–21–101(3), 6A C.R.S. (1987). The respondent is further ordered to pay the costs of these proceedings, in the amount of $256.73, prior to seeking readmission. All of the aforementioned sums shall be paid to the Supreme Court Grievance Committee, 600—17th Street, Suite 500S, Denver, Colorado 80202–5435.