Clarence E. WILLEY, Plaintiff–Appellee and Cross–Appellant,

v.

Raymond C. MAYER, individually and as an officer and director of Western Slope Investment & Development, Inc., and Western Slope Investment & Development, Inc., a Colorado corporation, Defendant–Appellant and Cross–Appellee.

No. 91CA0777.

Colorado Court of Appeals, Div. IV.

Jan. 28, 1993.

As Modified on Denial of Rehearing June 17, 1993.

Certiorari Granted Nov. 29, 1993.

David W. Duncan, Durango, for plaintiff-appellee and cross-appellant.

Stevens, Littman & Biddison, Andrew C. Littman, Craig A. Weinberg, Boulder, for defendant-appellant and cross-appellee.

Opinion by Judge JONES.

Defendants, Raymond C. Mayer, individually, and as an officer and director of Western Slope Investment & Development, Inc., and Western Slope Investment & Development, Inc. (Western Slope), appeal the judgment and orders of the trial court awarding plaintiff, Clarence E. Willey, partial recovery on a promissory note executed by defendants' attorney, R. Martin Rhodes II. Plaintiff cross-appeals the judgment on grounds that the trial court erred in not awarding full recovery on the promissory note. We reverse.

In June 1982, Mayer invested Rhodes with a general power of attorney to remain in force and effect until revoked by written instrument. The trial court found that Rhodes had used this power of attorney in 1984 and 1985 to sign corporate documents in the name of Mayer and the corporation.

In September and October of 1988, without the knowledge of Mayer, and with this power of attorney still in effect, Rhodes signed Mayer's name as president of Western Slope on a $40,000 promissory note made payable to himself. Rhodes thereafter borrowed $10,000 from plaintiff, which was evidenced by a $15,000 promissory note payable by Rhodes to plaintiff. The $15,000 note was secured by an assignment of the $40,000 Western Slope promissory note, which was secured by a deed of trust on property owned by Western Slope to which Rhodes had, again, signed Mayer's name as president of Western Slope.

After paying plaintiff $5,000, Rhodes defaulted on the $15,000 promissory note, which had matured. Upon demand to them by plaintiff, defendants refused to pay the $40,000 note which Rhodes had pledged as security for the $15,000 note, and plaintiff commenced this action. Following a bench trial, the trial court entered judgment on the Western Slope $40,000 note in favor of plaintiff in the amount of $5,000 plus interest and costs and $5,000 in attorney fees. This appeal and cross-appeal followed.

■ Defendants contend that the trial court erred in holding them liable for payment of the $40,000 Western Slope promissory note and attorney fees. They argue that the court was incorrect in ruling that their negligence precludes their denial of Rhode's authority to sign the note. We agree.

The trial court found that Mayer did not revoke the general power of attorney that he had given Rhodes by written instrument until September 18, 1989. Thus, pursuant to § 4–3–403, C.R.S. (1992 Repl.Vol. 2), Rhodes was authorized to affix the signature of his principal, Mayer, to the note by virtue of the general power of attorney with which he had been invested by Mayer. *See* § 4–3–403, C.R.S. (1992 Repl.Vol. 2) (Official Comment 3). However, the court also found, generally, that, even though Mayer had not revoked the power of attorney, he had not authorized Rhodes to sign his name pursuant to § 4–3–404, C.R.S. (1992 Repl.Vol. 2), because he had not ratified the signature.

The trial court resolved this apparent contradiction by concluding that Rhodes' signature for Mayer on the Western Slope note could not be deemed an inoperative, unauthorized signature under § 4–3–404(1), C.R.S. (1992 Repl.Vol. 2), because Rhodes had executed the note pursuant to a valid general power of attorney that Mayer had negligently allowed to remain in effect.

The court reasoned that Mayer's failure to terminate Rhodes' power of attorney constituted negligence, which precluded him from asserting the signature's lack of authority pursuant to §§ 4–3–404 and 4–3–406, C.R.S. (1992 Repl.Vol. 2), against plaintiff, whom the court found to be a holder in due course. We do not agree with this analysis.

A person may be precluded or estopped from denying the authority of a signature "where he expressly or tacitly represents to an innocent purchaser that the signature is genuine." Section 4–3–404(1), C.R.S. (1992 Repl.Vol. 2) (Official Comment 4). In addition, pursuant to § 4–3–406, a person is precluded from asserting the lack of authority of an unauthorized signature against a holder in due course if that person's negligence has contributed to the ability of the signatory to represent that the signature was genuine.

Here, the record reflects that Mayer made no statement, or representation, either expressly or tacitly, that would have induced plaintiff to believe that Rhodes had authority from Mayer to sign Mayer's name. Moreover, plaintiff testified that he did not rely upon Rhodes' power of attorney from Mayer, nor did he even know of its existence. Instead, plaintiff stated that he relied upon his trust in Rhodes and the high regard for Rhodes' abilities that he had developed from his knowledge of Rhodes over a ten-year period.

We, therefore, conclude that, because he did not expressly or tacitly represent that the signature was genuine, Mayer is not precluded from denying the authority of Rhodes' signature pursuant to § 4–3–404(1). *See* § 4–3–404(1), C.R.S. (1992 Repl.Vol. 2) (Official Comment 4).

The record also reflects that Mayer is not precluded from asserting Rhodes' lack of authority to sign the note on his behalf pursuant to § 4–3–406, C.R.S. (1992 Repl. Vol. 2), which provides as follows:

> Any person who by his negligence *substantially contributes* to a material alteration of the instrument or *to the making of an unauthorized signature is precluded from asserting the alteration*

*or lack of authority against a holder in due course* or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business. (emphasis added)

The trial court found plaintiff to be a holder in due course because he took possession of the note without any notice of any claim or defense to it on the part of any person, *see* § 4–3–302(1), C.R.S. (1992 Repl.Vol. 2), and because there was no indication that the note was "so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms, or ownership...." Section 4–3–304(1)(a), C.R.S. (1992 Repl.Vol. 2). *See Ackmann v. Merchants Mortgage & Trust Corp.*, 659 P.2d 697 (Colo.App.1982); *Salter v. Vanotti*, 42 Colo.App. 448, 599 P.2d 962 (1979).

The trial court found that the trust deed was defective because Rhodes had both signed Mayer's name and notarized his forged signature. This violated § 12–55–110(2), C.R.S. (1991 Repl.Vol. 5B) which prohibits a notary from notarizing a document in which he has a disqualifying interest. However, the court did not find this discrepancy sufficient to have caused plaintiff to lose his status as a holder in due course under § 4–3–304(1)(a), C.R.S. (1992 Repl.Vol. 2).

Plaintiff testified that he received the documents from Rhodes after they had been signed and that he did not have any way of ascertaining that it was Rhodes who had signed Mayer's name. Hence, there is evidentiary support for the trial court's findings, and they will not be disturbed upon review. *See Johnson v. Smith*, 675 P.2d 307 (Colo.1984).

Apart from the notarization discrepancy, all of the instruments were regular on their face and, thus, did not evoke a duty on the part of plaintiff to inquire as to their validity or as to the authority of Rhodes to sign as Mayer's agent. *See Money Mart Check Cashing Center, Inc. v. Epicycle Corp.*, 667 P.2d 1372 (Colo.1983). Thus, we con-

clude that, for the purpose of applying § 4–3–406, the trial court did not err in its determination that plaintiff was a holder in due course.

However, for plaintiff to be entitled to recover under § 4–3–406, there remains the question whether Mayer's alleged negligence in failing to terminate Rhodes' power of attorney did "substantially contribute[ ] ... to the making of [the] unauthorized signature." We conclude that, as a matter of law, it did not.

█ Colorado courts have not heretofore addressed the "substantially contributes" requirement found under § 4–3–406. Courts in other jurisdictions which have interpreted this provision of the Uniform Commercial Code (UCC) have construed this language to mean that there must be some causal connection or relationship between the negligence and the making of the unauthorized signature. *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 491 F.2d 192 (8th Cir.1974); *J. Gordon Neely Enterprises, Inc. v. American National Bank,* 403 So.2d 887 (Ala.1981); *Gast v. American Casualty Co.,* 99 N.J.Super. 538, 240 A.2d 682 (1968); *Gresham State Bank v. O and K Construction Co.,* 231 Or. 106, 370 P.2d 726 (1962). We adopt that interpretation.

Here, as we have previously observed, plaintiff had no knowledge of the power of attorney. Thus, plaintiff's acceptance of the note was not causally related to the negligence of Mayer in not timely revoking the power of attorney. Indeed, neither the existence nor duration of the power of attorney played any role in the transaction between Rhodes and plaintiff concerning the note.

Accordingly, the trial court erred in holding that defendants were precluded from asserting that Rhodes lacked the authority to sign the note in question on Mayer's behalf, and the judgment premised on that holding cannot stand. *See* § 4–3–404(1), C.R.S. (1992 Repl.Vol. 2).

In light of our resolution of this matter, we need not consider defendants' remaining contentions, nor plaintiff's cross-appeal.

The judgment is reversed.

CRISWELL and DAVIDSON, JJ., concur.