Clarence E. WILLEY, Petitioner,

v.

Raymond C. MAYER, individually and as an officer and director of Western Slope Investment & Development, Inc.; Western Slope Investment & Development, Inc., a Colorado corporation; and R. Martin Rhodes, II, Respondents.

No. 93SC452.

Supreme Court of Colorado,
En Banc.

June 20, 1994.

Rehearing Denied Aug. 8, 1994.

---

David W. Duncan, P.C., David W. Duncan,
Durango, for petitioner.

Stevens, Littman & Biddison, Craig A. Weinberg, Andrew C. Littman, Boulder, for respondents Raymond C. Mayer and Western Slope Inv. & Development, Inc.

No appearance by R. Martin Rhodes, II.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in this case to decide whether a holder in due course of a promissory note, signed in the name of the principal by his agent who held a general power of attorney, could sue upon the note and enforce it against the principal. For the reasons stated below, we answer that question in the affirmative. Accordingly, we reverse the judgment of the court of appeals in *Willey v. Mayer*, 862 P.2d 959 (Colo.App.1993), and remand the case to that court to resolve the undecided issues on appeal and for further proceedings consistent with this opinion.

I

In June 1982, Raymond C. Mayer (Mayer), president and director of Western Slope Investment & Development, Inc. (Western Slope), granted a general power of attorney to R. Martin Rhodes, II (Rhodes), an officer and attorney for Western Slope. The power of attorney, which by its terms was to remain in force until revoked by written instrument, authorized Rhodes to "buy, sell and deal in real and personal property of any description; to sign deeds, contracts and bills of sale; to borrow money and to grant any type of security interest in any of our real or personal property to secure loans; and to accept payment in his own name for any

property sold, or payment of any money borrowed in my name."[1] Between 1984 and 1989, Rhodes used this power of attorney to sign various corporate documents in the name of Mayer and Western Slope. In fact, Mayer had Rhodes sign documents for him in transactions involving Western Slope which were executed while Mayer was in prison in North Dakota in 1984 and 1985, including a $2 million loan agreement and a $3 million purchase option agreement.

In October 1988, without the knowledge of Mayer and while the power of attorney was still in effect,[2] Rhodes signed Mayer's name as president of Western Slope on a promissory note made payable to Rhodes by Western Slope in the amount of $40,000. Rhodes thereafter borrowed $10,000 from petitioner Clarence E. Willey (Willey) in exchange for a $15,000 promissory note payable by Rhodes to Willey. The $15,000 note to Willey was secured by an assignment of the $40,000 Western Slope promissory note, which in turn was secured by a deed of trust on property owned by Western Slope. Rhodes had also signed Mayer's name as president of Western Slope on the deed of trust.[3]

After paying Willey $5,000, Rhodes defaulted on the $15,000 promissory note. Willey then demanded payment from Western Slope and Mayer on the $40,000 note which Rhodes had indorsed to Willey to secure the loan. When they refused to pay the $40,000, Willey commenced this action to enforce the promissory note. Following a bench trial, the trial court entered judgment on the note in favor of Willey in the amount of $5,000[4] plus interest and $5,000 in attorney fees.

In its order, the trial court found that although the power of attorney was in force

---

1. The power of attorney also stated that "[t]he enumeration of specific items, rights, acts, or powers herein is not intended to, nor does it, limit or restrict, and is not to be construed or interpreted as limiting or restricting, the general powers herein granted to said attorney-in-fact."

2. The trial court specifically found that Mayer did not revoke the power of attorney given to Rhodes until September 1989.

3. Rhodes eventually was disbarred for professional misconduct, based in part on his actions

in obtaining the $10,000 personal loan from Willey. *People v. Rhodes*, 814 P.2d 787, 789 (Colo. 1991).

4. Citing the fact that "the $40,000 was only collateral and any foreclosure on that personal property is an equitable matter," the trial court limited Willey's recovery to the difference between the amount he loaned to Rhodes ($10,000) and the amount Rhodes had paid on the note before defaulting ($5,000).

and effect at the time Rhodes entered the loan agreement with Willey, Mayer had not authorized Rhodes to sign his name to the $40,000 note. It found, however, that Western Slope and Mayer were precluded under section 4–3–406, 2 C.R.S. (1992), of the Colorado Uniform Commercial Code (UCC), from asserting Rhodes' lack of authority to sign Mayer's name to the note because Mayer's failure to terminate the power of attorney upon Mayer's return from prison constituted "negligence substantially contributing to the making of the note." It further found that Willey was a holder in due course of the $40,000 note and that Willey took the note free of any fraud defense asserted by Western Slope and Mayer. Finally, the trial court found that Western Slope was the alter ego of Mayer and that Mayer thus was personally liable to Willey on the note.

The court of appeals reversed,[5] holding that Western Slope and Mayer were not precluded from asserting Rhodes' lack of authority to sign the note on Mayer's behalf because Willey's acceptance of the note from Rhodes "was not causally related to the negligence of Mayer in not timely revoking the power of attorney."[6] *Willey*, 862 P.2d at 962. The court of appeals also noted an "apparent contradiction" between the trial court's findings that Rhodes simultaneously was authorized to affix the signature of May-

er, his principal, to the note by virtue of the power of attorney, yet not authorized by Mayer to sign the note because "Mayer had not ratified the signature."[7] *Id.* at 960. The court of appeals concluded, however, that Rhodes' signature was "unauthorized" for purposes of section 4–3–404(1) of the UCC, which states that any unauthorized signature on a negotiable instrument is "wholly inoperative as that of the person whose name is signed, unless he ratifies it or is precluded from denying it. . . ." *Id.* at 962. Accordingly, it reversed the trial court's judgment awarding Willey partial recovery against Western Slope and Mayer on the $40,000 promissory note.[8]

## II

The UCC provides that "[n]o person is liable on an instrument unless his signature appears thereon." § 4–3–401(1), 2 C.R.S. (1992). "A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation." § 4–3–403(1). However, "[a]ny *unauthorized* signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it. . . ." § 4–3–404(1) (emphasis added). Under the UCC, an unauthorized signature is one made "without actual, implied, or apparent authority, and includes a forgery." § 4–1–201(43).

---

5. Although the court of appeals reversed the trial court's judgment in favor of Willey, it agreed with the trial court that Willey was a holder in due course of the $40,000 note, as defined in § 4–3–302(1) of the UCC. *Willey*, 862 P.2d at 961–62. Mayer and Western Slope did not file a cross-petition in this court for certiorari review of that determination. *See* C.A.R. 53(b). Furthermore, at oral argument before this court, counsel for Mayer and Western Slope conceded that Willey's status as a holder in due course constituted the law of the case. We will consider Willey to be a holder in due course for purposes of this case.

6. In his petition for writ of certiorari, Willey argued that he should recover against Mayer and Western Slope because Rhodes was authorized to sign the $40,000 note in Mayer's name. Willey did not challenge, however, the court of appeals' holding that Mayer's "alleged negligence" in failing timely to revoke the power of attorney did not substantially contribute to the making of an

unauthorized signature. *Willey*, 862 P.2d at 962 (applying UCC § 4–3–406). Because we did not grant certiorari on the negligence issue and thus the parties did not argue its merits in this court, it is not properly before us.

7. Although the court of appeals characterized the trial court's finding that Rhodes lacked authority to sign the note as based, in part, on the fact that Mayer did not ratify the signature, it does not appear from the record that the trial court addressed the issue of ratification.

8. Because of its conclusion on the issue of Rhodes' authority, the court of appeals did not address several issues raised by the parties on appeal and cross-appeal of the trial court's order, including the amount of damages awarded to Willey and whether the trial court erred in finding Western Slope to be the alter ego of Mayer. *Willey*, 862 P.2d at 962.

Accordingly, the question of whether Mayer and Western Slope are liable to Willey on the $40,000 note turns on whether Rhodes, as Mayer's agent, had the authority under the power of attorney to sign Mayer's name on the note. To resolve this dispute, we are guided by general principles of law and equity, including the law of principal and agent. § 4–1–103; *Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1094 (Utah 1988).

An agent can make his principal responsible for his actions if he is acting pursuant to either actual or apparent authority,[9] regardless of whether the principal has knowledge of the agent's conduct. *Life Investors Ins. Co. v. Smith*, 833 P.2d 864, 868 (Colo.App.1992); *Restatement (Second) of Agency* §§ 26, 27 (1958) (*Restatement*). Actual authority incorporates the concepts of express and implied authority. *Johnson v. Chilcott*, 658 F.Supp. 1213, 1219 (D.Colo. 1987); *Restatement* § 7 cmt. c. Express authority exists whenever the principal directly states that its agent has the authority to perform a particular act on the principal's behalf. *See Johnson*, 658 F.Supp. at 1219; *Zions*, 762 P.2d at 1094. Implied authority, on the other hand, embraces authority to do "those acts which are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent." *Zions*, 762 P.2d at 1094; *see also Montrose Land & Invest. Co. v. Greeley Nat'l Bank*, 78 Colo. 240, 244, 241 P. 527, 529 (1925); *Restatement* § 35 cmt. b.

A power of attorney is a written document by which one party, as principal, appoints another as agent (attorney-in-fact) and confers upon the latter the authority to perform certain specified acts or kinds of acts on behalf of the principal. *See King v. Bankerd*, 303 Md. 98, 492 A.2d 608, 611 (1985). This instrument delineates the extent of the agent's express authority and must be construed in light of the surrounding circumstances, including the customs and relations of the parties and the business in which the parties are engaged. *Id.; Restatement* § 34 cmt. h.

The power of attorney in this case expressly granted Rhodes the authority to "sign deeds, contracts and bills of sale; to borrow money and to grant any type of security interest in any of our real or personal property to secure loans; and to accept payment in [Rhodes'] own name for any property sold, or payment of any money borrowed in [Mayer's] name." It also stated that it was to be construed as a general power of attorney and that the list of enumerated powers conferred upon Rhodes was not meant to be exclusive or restrictive.[10] Between 1982 and 1989, Rhodes used this authority to sign numerous documents and instruments on behalf of Mayer and Western Slope, including loan agreements and other contracts involving financial risk for Western Slope. Indeed, Mayer specifically arranged for Rhodes to use the power of attorney to manage the business affairs of Western Slope for Mayer while he was in prison.

In view of the above, the authority delegated to Rhodes under the power of attorney clearly included the power to sign negotiable instruments for Mayer. This authority is rooted in the express language of the instrument granting Rhodes the power to "borrow money and to grant any type of security

---

9. The parties agree that this case does not involve the issue of *apparent* authority, because at the time that Willey entered into the loan transaction with Rhodes, Willey was unaware of Rhodes' status as agent for Mayer. Thus, it cannot be argued that Mayer induced Willey to believe that Rhodes was authorized to sign the $40,000 note on Mayer's behalf. *See Restatement (Second) of Agency* § 27 (1958). Our analysis therefore will be limited to the question of whether Rhodes had *actual* authority to bind Mayer to the $40,000 note.

10. It is clear that Rhodes was a "general agent" under the power of attorney, that is, "an agent authorized to conduct a series of transactions involving a continuity of service" and one "who is an integral part of a business organization and does not require fresh authorization for each transaction." *Stortroen v. Beneficial Finance Co.*, 736 P.2d 391, 395 (Colo.1987).

interest," and it is a power that is necessary, usual and proper to accomplish the tasks specifically delegated to Rhodes under that instrument. Therefore, we agree with Willey that Rhodes had actual authority to sign Mayer's name to the $40,000 promissory note.

■ Mayer and Western Slope initially contend, however, that even if Rhodes had actual authority under the power of attorney to sign negotiable instruments on Mayer's behalf, that authority should be construed to cover only those signatures affixed by Rhodes which expressly indicate that Rhodes, and not Mayer, signed the instrument. We disagree. An agent's authority to sign for his or her principal commonly encompasses the authority to sign the principal's name without any indication that the signature was affixed by the agent:

> Assuming that Peter Pringle is a principal and Arthur Adams is his agent, an instrument might, for example, bear the following signatures affixed by the agent—
>
> (a) "Peter Pringle", or
>
> (b) "Arthur Adams", or
>
> (c) "Peter Pringle by Arthur Adams, Agent", or
>
> (d) "Arthur Adams, Agent".....

§ 4–3–403 cmt. 3 (emphasis added). Moreover, because Mayer and Western Slope have failed to present any evidence that Rhodes was not permitted to sign Mayer's name in this manner, we conclude that the power to sign for Mayer included the power to sign instruments without disclosing the agency relationship. *See* § 4–3–307(1)(b).

Mayer and Western Slope argue, alternatively, that we should not hold them liable on the $40,000 note because Rhodes was not acting with the intent to benefit his principal when he affixed the signature. To support this contention, they refer us to section 39 of the *Restatement (Second) of Agency*, which states that "[u]nless otherwise agreed, authority to act as agent includes only authority to act for the benefit of the principal."

*See also McClellan v. Morris,* 71 Colo. 304, 312, 206 P. 575, 579 (1922); W. Edward Sell, *Agency* § 84, at 68–69 (1975). We do not find that general principle dispositive in this case.

■ An otherwise authorized signature on a negotiable instrument is not converted into an unauthorized forgery when an agent, authorized to sign negotiable instruments in his principal's name, abuses that authority by negotiating the instrument to a holder in due course for the agent's own personal benefit. The question of whether the agent was authorized to pledge an instrument as security for a personal loan is separate from the question of whether the agent was authorized to sign his principal's name to the instrument in the first instance. *See Bank South, N.A. v. Midstates Group, Inc.,* 185 Ga.App. 342, 364 S.E.2d 58, 61 (1987); *Grosberg v. Michigan Nat'l Bank—Oakland, N.A.,* 420 Mich. 707, 362 N.W.2d 715, 720 (1984); *Rohrbacher v. BancOhio Nat'l Bank, N.A.,* 171 A.D.2d 533, 567 N.Y.S.2d 431, 433 (1991); *Johnstown Mfg., Inc. v. Haynes,* 53 Ohio App.3d 42, 557 N.E.2d 1221, 1223 (1988); *Jones v. Van Norman,* 513 Pa. 572, 522 A.2d 503, 507 (1987). In this case, Rhodes was authorized under the power of attorney to sign Mayer's name on the $40,000 note. What was not authorized was the use to which Rhodes put that note once signed. *See Bank South, N.A. v. Grand Lodge of Free & Accepted Masons for Georgia,* 174 Ga.App. 777, 331 S.E.2d 629, 632 (1985); *Jones,* 522 A.2d at 507; 6 Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 3–404:8 (3d ed. 1993).

This distinction is supported by those sections of the *Restatement* which deal specifically with an agent's authority to sign a negotiable instrument on behalf of his principal. For example, the official comment to section 76 of the *Restatement,* found under the chapter entitled "Authorization to Make Negotiable Instruments," states that

> [i]f an agent is otherwise authorized ... the fact that the agent had an improper purpose in making or endorsing the instrument in the authorized form does not pre-

vent a bona fide purchaser in due course, or a subsequent transferee from one, from having the same rights in the instrument and against the principal as if the agent's act were authorized.

*Restatement* § 76 cmt. c. In a later section dealing with the liability of a principal to third parties where its agent acts with an improper purpose, the *Restatement* explains that:

> Although an agent authorized to issue negotiable instruments in the name of the principal issues them in fraud of the principal to a payee who has notice of the facts, the principal is subject to liability upon the instrument to a holder in due course.... Where an agent, authorized to issue or endorse checks or other negotiable instruments, issues or endorses one to a named payee or endorsee, intending to simulate the name of a creditor of the principal and embezzle the proceeds, the principal is liable to a holder in due course.

*Restatement* § 165 cmt. d. Finally, the official comment to section 173 of the *Restatement* indicates that a principal who employs a general agent "in a position in which it is usual for such agents to issue negotiable instruments" is liable to a holder in due course of such an instrument issued by the agent in the name of the principal, even where the agent acted contrary to the principal's directions and the holder in due course was unaware of the agency relationship. *Restatement* § 173 cmt. a.

Those sections describe the situation presented in this case—an agent who has actual authority to sign a negotiable instrument acts with an improper purpose and without authorization in transferring that instrument to a third party. In such cases, the principal is liable on the instrument to a holder in due course. *See Jones*, 522 A.2d at 507.

 There are several policy reasons why it is preferable to place the risk that an agent may abuse his authority for his own benefit on the principal, rather than on the holder in due course who takes without notice of the principal-agent relationship. First, this rule increases the principal's incentive to exercise care in selecting honest and reliable agents. Second, the principal is in a better position to supervise the agent's conduct than is the holder in due course. Finally, because the principal enjoys the many benefits of the agency relationship, it is not unfair to require that it also bear the costs of its agent's abuses of authority where they harm innocent third parties. *See generally* Harold Gill Reuschlein & William A. Gregory, *The Law of Agency and Partnership* § 26, at 69–70 (2d ed. 1990). Of course, the principal may seek recovery from the agent for any damages caused by the agent's breach of fiduciary duty. *See Mahoney Marketing Corp. v. Sentry Builders of Colo., Inc.,* 697 P.2d 1139 (Colo.App.1985).

### III

In summary, we reject Mayer's claim that the signature affixed by Rhodes, on behalf of Mayer, on the $40,000 note was "unauthorized" for purposes of section 4–3–404(1) of the UCC. Rhodes was authorized by the power of attorney to sign the promissory note, and his misconduct in using the note to secure a personal loan did not retroactively vitiate his authority to sign that note in Mayer's name. Accordingly, we reverse the judgment of the court of appeals and remand the case to that court for resolution of the remaining issues on appeal and for further proceedings consistent with this opinion.

LOHR, J., concurs in the result only.

ERICKSON and KIRSHBAUM, JJ., join in the concurrence.

Justice LOHR concurring in the result:

The majority concludes that the Colorado Court of Appeals erred in determining that an agent's signature purporting to be that of his principal was "unauthorized" under section 4–3–404(1), 2 C.R.S. (1992). Maj. op. at 1263, 1266. It therefore reverses the judgment of the court of appeals and remands the

case to that court for further proceedings. Maj. op. at 1266. Although I agree that the court of appeals erred, I conclude that it erred only by applying an incorrect test to determine whether a principal is precluded by negligence from defending against liability to a holder in due course. I would therefore reverse the judgment of the court of appeals and remand the case for resolution of the remaining issues on appeal and for further proceedings. Accordingly, I concur in the result reached by the majority.

## I.

In 1982, Raymond C. Mayer (Mayer), who was president of Western Slope Investment & Development, Inc. (Western Slope), granted a general power of attorney to R. Martin Rhodes II (Rhodes), who was an officer of and attorney for Western Slope, for the purpose of conducting business for Mayer. Rhodes subsequently signed various documents for Mayer and Western Slope.[1] In September 1988, Rhodes executed a $40,000 promissory note payable to Rhodes by Western Slope, together with a deed of trust on certain Western Slope property to secure payment of the note. The note and deed of trust contained only Mayer's purported signature, which had been affixed by Rhodes. In both documents, Mayer was identified under the signature as the president of Western Slope, but neither document indicated that Rhodes had signed Mayer's name. In fact, Rhodes notarized the deed of trust, attesting that Mayer had acknowledged the instrument.[2] In October 1988, Rhodes assigned the note and deed of trust to Clarence E. Willey (Willey) as collateral for a $10,000 loan from Willey. After the promissory note for that loan became due and Willey was unable to collect on it, he instituted the present suit against Mayer,[3] Western Slope, and Rhodes. The case was tried to the La Plata County District Court in January 1991.

Following the bench trial, the trial court found that Mayer had not authorized Rhodes to sign Mayer's name to the $40,000 promissory note. The court also found that Willey was a holder in due course of that note. Under section 4–3–305(2), 2 C.R.S. (1992), a holder in due course takes an instrument free from all defenses of any party to the instrument with whom the holder has not dealt except for certain specified defenses, including "illegality of the transaction." Mayer and Western Slope argued to the trial court that Mayer had not authorized Rhodes to sign Mayer's name to the note, and that therefore neither Western Slope nor Mayer was "a party to the instrument" and the signing was an illegal transaction. Thus, argued Mayer and Western Slope, even if Willey was a holder in due course, Willey was not immune under section 4–3–305 from the defense that the signature was unauthorized.

The trial court ruled that Mayer had not authorized Rhodes to sign Mayer's name to the note but that Mayer was precluded under sections 4–3–404, –406, 2 C.R.S. (1992),[4] from

---

1. The general power of attorney was given by Mayer individually. Rhodes, however, purported to act as attorney-in-fact for Mayer in Mayer's capacity as president of Western Slope as well as in Mayer's individual capacity. No issue is presented on certiorari review concerning whether Rhodes had authority to act for Western Slope in this manner. I will assume, therefore, that Rhodes was authorized to act for Mayer as president of Western Slope to the same extent that he was authorized to act for Mayer individually.

2. Willey did not rely on the power of attorney, or know that Rhodes had Mayer's power of attorney. Rhodes testified that he attempted to duplicate or forge Mayer's signature on the $40,000 note and admitted that as a notary he falsely stated that Mayer appeared before him and ac-

knowledged his signature on the deed of trust. A notary cannot notarize a document in which he is a payee. § 12–55–110(2), 5B C.R.S. (1991); *See also Brereton v. Bennett*, 15 Colo. 254, 25 P. 310 (1890).

3. Western Slope was alleged to be Mayer's alter ego as a basis for the claim against Mayer.

4. § 4–3–404, 2 C.R.S. (1992), provides:

Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it....
§ 4–3–406, 2 C.R.S. (1992), provides:
Any person who by his negligence substantially contributes to ... the making of an unauthorized signature is precluded from asserting

raising that defense. Mayer was so precluded because he did not expressly terminate Rhodes' power of attorney and he allowed Rhodes to perform legal work for Western Slope. This conduct, said the court, constituted negligence. Furthermore, that negligence substantially contributed to the making of the note. Under section 4–3–406, 2 C.R.S. (1992), "[a]ny person who by his negligence substantially contributes to ... the making of an unauthorized signature is precluded from asserting the ... lack of authority against a holder in due course...." *See also* § 4–3–404(1), cmt. 4, 2 C.R.S. (1992) (providing that a person whose name is signed without authority may be precluded by negligence under section 4–3–406 from denying the signature). The court entered a judgment for Willey against Mayer and Western Slope in the amount of $5,000 plus interest and costs, and $5,000 in attorney fees.

## II.

On appeal, the court of appeals did not reverse the trial court's ruling that Mayer was negligent. *Willey v. Mayer*, 862 P.2d 959, 962 (Colo.App.1993). Instead, the court determined that Mayer's "alleged negligence" did not substantially contribute to the making of the unauthorized signature. *Id.* The court ruled that therefore Mayer was not precluded from asserting Rhodes' lack of authority as a defense against liability to Willey under section 4–3–404(1).[5] *Id.*

In reaching its determination that Mayer's negligence did not substantially contribute to the making of the signature, the court of appeals referred to several cases from other jurisdictions. *Id.* The court adopted the interpretation of section 4–3–406 of the Uniform Commercial Code found in those cases.

the ... lack of authority against a holder in due course....

**5.** The majority concludes that the issue of whether Mayer's negligence substantially contributed to the making of the unauthorized signature is not properly before us. Maj. op. at 1263 n. 6. We granted certiorari on the following issue:

*Id.* That interpretation construes section 4–3–406 to require a causal connection or relationship between the negligence and the making of the unauthorized signature. *Id.*

Nevertheless, the court then analyzed the relationship not between Mayer's negligence and the making of the signature but between Mayer's negligence and Willey's acceptance of the note. *Id.* This latter relationship is irrelevant to the requirement of section 4–3–406 that the negligence substantially contribute to the "making of an unauthorized signature." It is also irrelevant to the interpretation of section 4–3–406 adopted by the court of appeals. The cases upon which the court relied for this interpretation themselves contain no requirement of a causal relationship between the negligence and the acceptance of an unauthorized signature by the holder in due course. *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192 (8th Cir.1974); *J. Gordon Neely Enters., Inc. v. Am. Nat'l Bank*, 403 So.2d 887 (Ala.1981); *Gast v. Am. Casualty Co.*, 99 N.J.Super. 538, 240 A.2d 682 (1968); *Gresham State Bank v. O and K Constr. Co.*, 231 Or. 106, 370 P.2d 726 (1962).

## III.

The majority avoids the issue of Mayer's negligence by finding that under the power of attorney, Rhodes had actual authority to *sign* Mayer's name to the promissory note but that Rhodes had no authority to *transfer* the note to Willey. Maj. op. at 1265, 1266. The issue of negligence arises under sections 4–3–404 and –406 which pertain only to unauthorized signatures. §§ 4–3–404, –406, 2 C.R.S. (1992). Therefore, under the majority's analysis, because Rhodes did not make an unauthorized signature, the issue of negligence does not arise. The majority then

Whether the court of appeals erred in finding that a holder in due course of a promissory note, signed on behalf of the principal by his agent who was vested with the power of attorney, could not sue upon the note and enforce it against the principal.

Nothing in this language precludes us from a proper analysis and disposition of the case.

analyzes Rhodes' unauthorized transfer of the note under agency law, and concludes, apart from any consideration of negligence, that Mayer is liable to Willey because Willey is a holder in due course. Maj. op. at 1266.

I disagree with the majority's conclusion that Rhodes had authority to sign Mayer's name to the promissory note. I do agree that situations may arise, as the cases and treatise cited by the majority indicate, in which an agent clearly has authority to sign a negotiable instrument but then acts without authority in pledging that instrument as security. Maj. op. at 1265–1266. This case, however, does not present such a situation.

The majority cites the *Restatement (Second) of Agency* (1957) (*Restatement*) to support the conclusion that Rhodes had authority to sign but no authority to transfer the note. Maj. op. at 11–12. However, analysis of the *Restatement,* including the sections quoted by the majority, indicates that Rhodes lacked authority to sign the note because he was acting with an improper purpose.

Under the *Restatement,* an agent has no authority to act other than for the benefit of the principal. *Restatement* §§ 33 cmt. a (agent has authority to do only what he reasonably believes the principal desires him to do), 39 cmt. a (agent has authority to act only for principal's benefit), 76 cmt. c (agent has no authority to execute negotiable instruments for his own account); *see also Restatement* § 34 cmt. h (powers of attorney are interpreted in light of general customs and relations of the parties and all-embracing expressions such as "as sufficiently in all respects as we ourselves could do personally in the premises" are discounted or discarded).

The three sections of the *Restatement* quoted by the majority reiterate that an agent who acts contrary to the wishes of the principal is acting without authority because of that improper purpose. Maj. op. at 11–12. The three sections indicate that despite this lack of authority, the principal is liable to a holder in due course *as if* the agent acted with authority. *Restatement* §§ 76 cmt. c (even though agent lacks authority because of improper purpose, a bona fide purchaser in due course has rights against the principal "as if the agent's act were authorized"), 165 cmt. d (even though agent lacks authority because acting with an improper purpose (*see* cmt. a), the principal is subject to liability to a holder in due course), 173 cmt. a (even though agent acts contrary to the principal's directions, the principal is liable to a holder in due course "as if the instrument were authorized").

The *Restatement,* therefore, does not support the majority's conclusion that Rhodes acted with authority when signing Mayer's name to the $40,000 promissory note made payable to himself. *See also People v. Rhodes,* 814 P.2d 787, 789 (Colo.1991) (attorney discipline case in which this court noted that Rhodes "admitted that he ... had signed Mayer's name to [the promissory note and deed of trust] without authorization").

IV.

Because Rhodes signed Mayer's name to the promissory note for an improper purpose, I conclude, as did the trial court, that Mayer did not authorize Rhodes to sign Mayer's name on the promissory note. Under agency law, as indicated by the previous discussion of the *Restatement,* Mayer would nevertheless be liable on the note to Willey because Willey is a holder in due course. However, under the Uniform Commercial Code, Mayer might escape liability if he is not precluded by negligence from asserting Rhodes' lack of authority. §§ 4–3–305(2)(b), –404(1), 2 C.R.S. (1992). In resolving this tension between the *Restatement* and our statutes, our statutes must control.

In the present case, however, it is not necessary to resolve the tension because the trial court found on adequate evidence that Mayer was negligent and that his negligence substantially contributed to the making of the promissory note. As discussed above, the court of appeals applied the wrong test to determine whether, under section 4–3–406, 2

C.R.S. (1992), Mayer's negligence substantially contributed to the making of the unauthorized signature. The court of appeals therefore erred in reversing the trial court's judgment. Because Mayer's negligence substantially contributed to Rhodes' signing of the note, Mayer is precluded from asserting Rhodes' lack of authority against Willey. § 4–3–406, 2 C.R.S. (1992). Therefore, just as under the *Restatement,* Mayer is liable to Willey because Willey is a holder in due course. § 4–3–305, 2 C.R.S. (1992).

### V.

For the foregoing reasons, I would reverse the judgment of the court of appeals and remand the case to that court for resolution of the remaining issues on appeal and for further proceedings. Accordingly, I concur in the result reached by the majority.